————o————

JESSE HOLLIDAY, Respondent, *vs.* JONATHAN JONES, Appellant.

1. *Practice, civil—Evidence—Instruction—Taking case from jury.*—Where there is any evidence to sustain verdict for defendant, an instruction ordering the jury to find for plaintiff is improper.

*Appeal from St. Louis Circuit Court.*

*D. T. Jewett, and W. H. Horner,* for Appellant.

*H. D. Laughlin,* for Respondent.

WAGNER, Judge, delivered the opinion of the court.

This suit was brought originally before a justice of the peace, on a promissory note dated Oct. 6, 1859, for two hundred and fifty dollars. The defense was payment. After a trial in the justice's court, the case was taken to the Circuit Court, where the plaintiff had judgment under an instruction that there was no evidence to sustain the defense.

It will be necessary to give a summary of the facts in order to determine whether the instruction should have been granted. It appears, that in the spring of 1859, Jas. M. Hughes, Thos. Marshall, Dr. Sanderson, Jesse Holliday—the plaintiff—and the Sigersons had a claim on, or were interested in, what was known as the "Sigerson Nursery Tract," near the

city of St. Louis.   For the purpose of disposing of this land, and applying the proceeds to the respective parties in interest, they all conveyed the same to W. T. Wood and R. S. Hart, as trustees.   The trustees divided the land in lots, and at a sale had by them, the defendant purchased two lots, at the price of one thousand dollars, two hundred and fifty of which he paid in cash, and gave his three several notes for the same amount, due respectively, in one, two and three years.   The note now sued on is the last note due.

The parties interested in the property bought largely at the sale, and after the sale they concluded that they would like to have the lots bought by defendant, to square out some of their other purchases.   They then requested Hart to negotiate for a re-conveyance to them of his lots, and a return of his money and the notes that he had given for the deferred payments.   Hart succeeded in finally effecting the arrangement, and defendant re-conveyed the lots and received back the money that he had paid.   By agreement defendant conveyed the lots to Hughes, but he never received either of the notes ; and after nearly eleven years, Holliday, the plaintiff, has brought suit on the last one.

The only witnesses in the case were Hart—the trustee— and. the defendant.   Hart, in his deposition, says that some time after the trustees made the deed he was applied to by Sanderson and Marshall, to procure from the defendant a transfer of his purchase to Hughes, Marshall, Sanderson and Holliday—the plaintiff.—All these parties having large claims on the Sigerson Tract, amounting to some $80,000 or $100,000, had bid in pretty largely at the sale, and they regarded it as desirable that they should have the property that defendant purchased to square some of their purchases, and so they offered him a reward if he would get defendant to transfer his purchase to them at the price he gave for it.   The matter was finally arranged, and it was agreed that defendant should convey his purchase to the parties named, and that he should receive therefor the money that he had paid, and his three promissory notes that the trustees had turned over to Hughes, Sanderson, Marshall and Holliday, on account of

their interest in the sale of the tract of land. Witness soon after took to the parties Hughes, Marshall & Co., the deed of defendant for the lots he had purchased, returned him the money that he had paid, and assured him that the notes would be looked up and handed back to him without delay, the parties saying that they could not just then lay their hands on them. He called on them several times afterwards for the notes, and was always pushed off with the promise that the matter should not longer be neglected; that the notes would be found and soon returned to defendant. But they were never handed to him or defendant.

The deed was made to Hughes at the parties' request. Sanderson and Marshall were the persons present, and who determined to whom the deed should be made. Plaintiff Holliday in a conversation with witness, on his relations with Marshall, Sanderson and the Sigerson Nursery Tract, told witness that he had some $20,000 in the concern, and that he had put in that amount with his friends Hughes and Marshall. Hughes, Marshall, Sanderson and Holliday had made advances to the Sigersons on the tract, and finally claimed to own it, and it was in a talk about the whole affair that Holliday said he had the amount in with them.

Defendant testified that Hart, in the negotiations for the re-conveyance, represented that he was acting for all the parties, and that was his understanding; that he had made many applications for his notes, and had always been put off with one excuse or another—that they were misplaced, or that the key to the safe could not be found.

The above is substantially all the evidence given in the case. I think the court erred in saying that there was no evidence as against Holliday, and withdrawing the whole matter from the jury. The conversation of Holliday, and all the facts and circumstances had a tendency to show that there was a joint interest and connexion between all the parties, and that they were acting for each other, and the defendant was entitled to have a jury pass upon the facts.

The judgment, therefore, should be reversed and the cause remanded; the other judges concur.