SMITH *et al.* v. HUTCHINSON, *Plaintiff in Error*.

|  |  |
| --- | --- |
| 83 | 683 |
| 32a | 59 |
| 83 | 683 |
| 57a | 414 |

1. **Will** : ERASURE : DEMURRER TO EVIDENCE. Where, in a proceeding to contest the validity of a will on the ground of its alteration by an erasure, the evidence is conflicting on the issues whether the will as executed contained the erasure, or whether it was thereafter made by defendant, a legatee, a demurrer to the evidence offered by the proponent to establish the will should not be sustained.

2. **Question of Fact** : JURY. Where a question of fact is in issue and there is evidence tending to prove it, it should be submitted to the jury.

*Error to Moniteau Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

*Moore & Williams* for plaintiff in error.

(1) Whether or not the erasure was made before the execution of the will should have been passed on by the court and a special finding made. (2) The instrument offered in evidence was executed by Mrs. Smith as, and for her will, and it is her will, either as originally written, or it is her will as it appears after the erasure, and the court ought to have so found. The giving of plaintiff's instruction, which was a demurrer to the evidence, was clearly erroneous, as was also the refusal of defendant's instructions by the court. Under the provisions of our statute, section 3963, in reference to

the revocation of wills, the same being nearly synonymous with the statutes of most of the states and of England, such erasure was not a revocation of the will. If erased by the testatrix after its execution, it was a revocation *pro tanto.* There being no attempt to add to the will, or substitute another in the place of Simon H. Smith, to whom the life estate was reserved, the result would be the revocation of that clause. *Dickey v. Malechi,* 6 Mo. 177; 1 Redf. on Wills, § 25, top page 307–8 (4 Ed.); 1 Jarman on Wills (5 Am. Ed.) p. 291 (top) and cases cited; *Bigelow v. Gillott,* 123 Mass. 102; Kirkpatrick's Will, and cases cited, 7 C. E. Green 463; *McPherson v. Clark,* 3 Bradford (N. Y.) 82; 2 Greenl. Ev., § 681. If erased by a stranger or even by defendant, the will should stand as written, no regard being had to the erasure. R. S. of Mo., sec. 3963; *Smith v. Fenner,* 1 Gallison C. C. 170.

*L. F. Wood* for defendants in error.

(1) The petition was sufficient to put in issue the question whether the writing proved in the probate court was the will of Anna E. Smith. It was more explicit than the statute requires. R. S. 1879, sec. 3980, p. 683; *Johnson v. Glascock,* 2 Ala. 218; *Johnson v. Hainsworth,* 6 Ala. 443. (2) The contest of the will before the circuit court had the same effect as if an appeal had been taken from the probate court, and it was the duty of the proponent to prove it up as fully as if no action had been taken upon it by the probate court. *Lams, admr., v. Heln, admr.,* 56 Mo. 420; *Rogers v. Thomas,* 1 B Monroe (Ky.) 390; *Bennoist v. Murrain,* 48 Mo. 48; *Tingley v. Cowgill,* 48 Mo. 291. The evidence before the circuit court was insufficient to establish any will (R. S. 1879, sec. 3979), and certainly did not prove the will, as insisted upon by the proponent. (3) The evidence is clear that the clause giving the life estate to the husband was erased after the publication of the will, and in the absence of evidence the law would raise the

presumption that it was made after signing. 1 Redfield on Wills (4th Ed.) p. 332, sec. 54. As the will was in the possession of the proponent, and he was the only one benefited by the erasure, the presumption is that he did it. *Bennett v. Sherod*, 3 Ired. 303. (4) The erasure is *prima facie* evidence of revocation, and it devolves upon the proponent to show that it was done by accident or mistake. 2 Greenleaf (7th Ed.) note 1 to sec. 681, citing case of Cook's Will, 3 American Law Journal, 353, N. S. (5) The striking out of the life estate changes the remainder, giving a present fee. It is therefore a new will as to him and to be effectual must have been republished. (6) The proponent having sought to take advantage of the erasure and having failed in that cannot now be allowed to have the will proved as originally written. 1 Greenleaf Ev. (7 Ed.) sec. 565; *Martin v. Miller*, 4 T. R. 329.

EWING, C.—This was a proceeding under section 3980, Revised Statutes, 1879, to contest the validity of the last will of Anna Eleanor Smith, the plaintiffs being her husband, Simon H. Smith, and the brothers and sisters of the testator; and the defendant a legatee. After the formal parts the petition proceeds as follows: "And the said plaintiffs further state that said supposed will, as admitted to probate, is not the last will and testament of the said Anna E. Smith, and is not her will as signed, published and declared by the said Anna E. Smith, but on the contrary the said supposed will has been mutilated by erasure and otherwise, before it was admitted to probate as aforesaid, so as to make the pretended legacy to the defendant, James M. Hutchinson, much greater than was intended by said testatrix, and these plaintiffs suppose and believe and so charge the fact to be that the said alterations and erasures were made in said supposed will by said defendant for the fraudulent purpose of giving him, the said defendant, a present fee-simple title to said land, wherefore petitioners pray that an issue be made up in this court as to whether this said writing

admitted to probate as aforesaid is the last will and testament of the said Anna E. Smith; and further that the probate of said supposed will be set aside and held for naught, and that said instrument be declared null and void and inoperative, and that the court will grant them such other and further relief in the premises as may be right and proper."

The answer admitted the relationship of the plaintiffs to testatrix, that she died childless, and that the said will was duly proved and admitted to probate by the probate court; also that defendant was a legatee. "But defendant denies that he or any one for him ever at any time made any change, alteration or erasure in said will before the same was offered for probate or at any other time. He denies that any change has been made after the death of the testatrix, Anna E. Smith, and defendant alleges that said instrument in writing aforesaid, admitted to probate as aforesaid, is the last will and testament of said Anna E. Smith, deceased, and he denies that plaintiffs are entitled to any judgment setting said will aside or for any relief whatever."

The case being called for trial, the same was, by consent of parties, submitted to the court, a jury being waived.

Defendant, as proponent of this will, offered the following evidence, to-wit: the will in controversy:

"In the name of God, Amen, I, Anna Eleanor Smith, of Linn township, in Moniteau county and State of Missouri, being of sound mind and memory, and of the age of fifty years, and considering the uncertainty of this frail and transitory life, do therefore make, ordain, publish and declare this to be my last will and testament, that is to say, after all my lawful debts are paid and discharged, the residue of my estate, real and personal property, I give and devise unto James Madison Hutchinson, son of Andrew Hutchinson of Linn township, in Moniteau county and state of Missouri, all the following described tracts or parcels of land lying and being situate

in the county of Moniteau and state of Missouri, to-wit: The south half of the northeast quarter, and the north half of the southeast quarter of section twenty (20), and also the northwest quarter of the southwest quarter of section twenty-one (21), in township forty-seven (47), of range fourteen (14), containing two hundred acres more or less to have and to hold all and every the said tracts or parcels of land, with all the rights, immunities and appurtenances thereto belonging to him, the said James Madison Hutchinson, his heirs and assigns forever.  *I hereby reserve that my beloved husband, Simon H. Smith, shall have the use of said land and have the right to take the issues and profits thereof for the term of his mortal life.*"  The clause in italics is erased in the will by strokes of a pen through each word.  There were other parts of the will, but not bearing upon the questions before us.  Then came the ordinary proof by the subscribing witnesses with the judgment of probate and certificate thereof.

Peter Nichols was then introduced as a witness by the defendant, who testified that:  "The will is in my handwriting.  It was signed by Mrs. Anna E. Smith.  I signed it as a witness at her request on the date stated; it was signed at the house of Mr. Simon H. Smith."

CROSS-EXAMINED:  "The whole will is in my handwriting."  Question.  "Did you write the part erased?"  Answer.  "I did; to the best of my recollection this clause was not erased when the will was signed, but I am not positive; but it is not my way of doing business;  I usually re-write the will or note that it is erased before signing; I have written whole wills over because of some little mistake."

RE-EXAMINED:  "I think Simon Smith was present; I cannot state positively that the erasure was not made before the signing; the erasure appears to be in the same ink the will was written with; I often erase or inter-line instruments of writing, but seldom do in wills; I left this will with Mrs. Smith; she was a second wife of

Smith, and was previously the widow Bohannan: the next time I saw the will it was in the probate court."

RE-CROSS-EXAMINED: "I think I wrote the will at Mrs. Smith's house, but cannot recollect; it is so long ago my memory is not clear about it, but I do not think there was an erasure when it was signed."

JOHN NICKLES states: "I was a witness to the will; I signed it at Simon Smith's house; I saw Mrs. Smith sign it and I signed it at her request; Simon Smith was present."

CROSS-EXAMINATION: "The erasure was not there when I signed it to the best of my knowledge."

RE-EXAMINED: "I cannot swear positively that the erasure was not there when the will was signed; the erasure looks like the same ink as the writing in the body of the will; think the will was written at Smith's; James Hutchinson was not a member of Smith's family at the time."

F. W. RENNLER states: "I was a near neighbor of the testatrix, Anna E. Smith, in her life time, and an intimate friend; she was in feeble health a long time before her death; had two conversations with her not long before her death, in the first of which she spoke of giving the property to defendant, or stated that defendant would inherit it at her death; that witness advised her to give said farm to her husband or make some provision for him; that afterwards in a subsequent conversation, she stated she had studied over what witness had said to her, and had concluded to let this will stand as it was, and that Hutchinson was to have the land at her death; that a day or two after her death, he went to her house where Simon H. Smith was, who gave him the will and asked him to read it; that the will was canceled at that time as it now appears."

JAMES M. HUTCHINSON states: "I live in Sullivan county, Missouri; I have lived there seven years this fall; am defendant in this suit; at the time Mrs. Smith died, I was living in Sullivan county and did not know

of her death until some three months afterwards; I first saw her will at Dr. Christian's, where Simon Smith gave it to me; that was the day before I had it probated; I had seen Judge Nickles, who told me about the will and said he was a witness, and it would suit him to come out next day to California; I then went to Uncle Simon Smith and he gave me the will just as it is now; Dr. Christian is a nephew by marriage of Aunt Anna's; he lived in the north part of the county, near my father's; Uncle Simon Smith went with me to Dr. Christian when he got the will and handed it to Dr. Christian and asked him to read it; the doctor read it aloud and when he came to the part erased, he asked Uncle Simon what that meant; Uncle said he did not know; he gave me the will and I took it and had it probated the next day."

CROSS-EXAMINED: "I did not tell Dr. Christian that I had had this will in my possession in 1868; when the will was made I don't remember just where I was living, but my trunk and clothes were at Uncle Simon's; if I was not there my home was there; I had been gone to Sullivan county about four years when Aunt Anna died; I staid at Uncle Simon's when at work, until I went away, and my trunk was there when Aunt Anna died; I was not married until after I went to Sullivan county."

RE-EXAMINED: "Andrew Hutchinson is my father; I went to live with Anna Smith when I was seven years old in 1860; when we first came to this county, father rented a place of Aunt Anna's mother, Mrs. Smith, who was then the wife of Thos. Bohannan, who afterwards died; they wanted me to live with them and I did so, and made it my home until she married Uncle Simon; I am a poor scholar and no penman."

ANDREW HUTCHINSON states: "I am defendant's father." Question. "What do you know about this will, and state if the testatrix made any statement to you in regard to this change in the will?" Plaintiff objected to the question and the court sustained the objection except as to any declaration testatrix may have

made as to changing the will. Answer. "I never saw the will and could not read it, and she made no statement to me about any change; Aunt Anna told me she intended Jimmy (the defendant) to have the land; she told me she had a will and that it was in Jimmy's trunk, and she wanted me to take the trunk home with me, because she was afraid Jimmy would never see it if left there, but I would not."

This was the substance of the evidence offered in the case. Plaintiff then offered the following instruction, to-wit: "The court declares as a matter of law that the evidence offered by the proponent to establish the will in controversy is wholly insufficient for the purpose," which was given against the objection of the defendant. The whole material part of the evidence has been set out, for the reason that the controlling question is as to the action of the court below in sustaining a demurrer to the evidence.

The first question then for consideration is the instruction given in the nature of a demurrer to the evidence. In *Buesching v. The St. Louis Gas Light Co.*, 73 Mo. 219, it is said: "In passing upon a demurrer to the evidence the court is required to make every inference of fact in favor of the party offering the evidence, which a jury might, with any degree of propriety, have inferred in his favor, and if, when viewed in this light, it is insufficient to support a verdict in his favor, the demurrer should be sustained." Again, in *Wilson v. The Board of Education*, 63 Mo. 137, it is said: "A demurrer to the evidence admits every thing which the evidence conduces to prove, though but in a slight degree." Whenever there is a question of fact involved, and there is any evidence tending to prove it, it should always be submitted to the jury, and it is error in such case to take the case from the triers of the fact. *Smith v. H. & St. Jo. R. R.*, 37 Mo. 287. But where there is no evidence, then it is the province of the court, and the well-established practice to instruct the jury that, upon the evidence

submitted, the plaintiff cannot recover. *Lee v. David*, 11 Mo. 114. "It is the common practice, and well sustained by authority, ancient and modern, and by several decisions of this court, when the plaintiff has offered no evidence which would be sufficient in law, if true, to warrant the jury in finding a verdict in his favor, to instruct the jury to find for the defendant." *Clark v. H. & St. Jo. R. R. Co.*, 36 Mo. 203; *Harris v. Woody*, 9 Mo. 113. "It is a principle well-settled and always adhered to, that if there is any evidence tending to prove the issues of fact, the case must go to the jury." *Bowen v. Lazaleye*, 44 Mo. 383; *Woods v. A. M. Ins. Co.*, 50 Mo. 112; 50 Mo. 149; 50 Mo. 198; *Holliday v. Jones*, 59 Mo. 482; 2 Greenl. Ev., section 295; *Grady v. A. M. C. Ins. Co.*, 60 Mo. 116.

What was the question of fact for determination? The petition alleges that the paper purporting to be the will of Anna E. Smith is not her last will and testament, and then charges that it had been mutilated and changed by the defendant. The answer denies this, and alleges it to be the will of the testator. By an examination of the testimony it will be seen that the paper purporting to be the will was offered in evidence, and the subscribing witnesses introduced who testified to its making, execution, etc. It would seem clear that this evidence tended to prove that the testator did execute the paper offered, as her last will. But an inspection of this paper shows that a clause of that will had been erased. Then, the question of fact remains, was it erased by the defendant or by his authority? Upon this question, the evidence is certainly conflicting. The one side tending to prove that the defendant, at one time before the death of the testator, had the will in his possession and had an opportunity to, and an interest in its erasure, the other side tending to prove that he never saw the will until months after the death of the testator, and had no opportunity to have erased the clause in question. Of course this court does not pretend to pass upon the

weight of this evidence, but only that there was evidence on the part of the proponent tending to prove the issues presented; and the demurrer to the evidence should not therefore have been sustained. The court below committed error in giving this instruction, for which the judgment is reversed and the cause remanded. All concur.