GROLL, *Appellant*, v. TOWER.

1. **Demurrer to Evidence.** The rule is well settled as to a demurrer to the evidence that if there is any evidence tending to prove the issues of fact, the case must go to the jury.

2. ———: NEGLIGENCE. Where plaintiff seeks to recover for the death of her husband, alleged to have resulted from a fall caused by the negligence of the defendant, his employer, in furnishing a defective platform, and the evidence fails to show the fall of the deceased, a demurrer thereto is properly sustained.

3. **Material Averment, Failure of Proof of.** Where there is failure of proof of a material averment in the petition, there can be no recovery.

4. **Witness:** PHYSICIAN, COMPETENCY OF: STATUTE. Under Revised Statutes, section 4017, relating to persons who are incompetent to testify, the evidence of an attending physician, if offered by the patient or his representative, is competent. Where it is offered by the opposite party the physician cannot testify against the objection of the patient, or his representative. *Gartside v. Insurance Company*, 76 Mo. 446, distinguished.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Gottschalk & Bantz* for appellant.

(1) The court erred in excluding the testimony of the physician. The statute should not be construed as a prohibition upon the admission of such testimony under all circumstances. The statute does not create a privilege in favor of the physician; it was intended to secure

the patient from di·closures by the physician. *R. R. v. Martin*, 41 Mich. 667; *Scripps v. Foster*, 41 Mich. 742; *Staunton v. Parker*, 19 Hun (N. Y.) 55. (2) The evidence made out a case of negligence. It was the duty. of defendant to furnish proper and safe machinery, and he is bound to know of·its defects. *Porter v. R. R.*, 71 Mo. 66; *Reber v. Tower*, 11 Mo. App. 199; *Dowling v. Allen*, 74 Mo. 14. It was not the duty of Groll to inspect or know of the defects. Cases *supra*. (3) All inferences which may be drawn from the facts shown are to be construed in favor of plaintiff. *Mauerman v. Siemerts*, 71 Mo. 101; *Buesching v. St. Louis Gas Light Company*, 73 Mo. 219.

*Dyer, Lee & Ellis* for respondent.

(1) There is absolutely nothing in the testimony to fasten any liability upon the defendant for the injuries sustained by Groll, and especially is this so in view of the recitals in the petition concerning the manner in which the injury occurred. (2) The court committed no error in excluding the testimony of the attending physician. R. S., sec. 4017; *Gartside v. Insurance Company*, 76 Mo. 446; *Linz v. Insurance Company*, 8 Mo. App. 363.

EWING, C.—This is an action by the widow of Ed. Groll, deceased, for damages, for injuries sustained by Groll, from which he died, by reason of the negligence of the respondent in failing to provide safe and proper machinery. The petition alleges that Groll, while in the performance of his duties at respondent's soap factory, repaired certain pipes in a tank hereinafter described; that while ascending a ladder from the tank, a platform on which the ladder rested gave way, precipitating him to the bottom of the tank, from which fall he sustained injuries causing his death; that the platform gave way on account of its being constructed of improper material negligently built, and negligently allowed to become

rotten and decayed and remain so. The answer of respondent admits that Groll was his employe at the time of the injury; the necessity of descending into the tank for repairs; the existence of the ladders and platform; that plaintiff is Groll's widow; also Groll's death on the day named in the petition, and alleges contributory negligence. The reply is a general denial.

On the trial in the circuit court, at the close of the plaintiff's evidence, on motion of defendant, the court sustained a demurrer to the evidence, and entered judgment for the defendant. Plaintiff then appealed to the St. Louis court of appeals, where the judgment of the circuit court was affirmed, and from which the plaintiff appealed to this court. There are two questions for consideration: One, did the circuit court err in sustaining the demurrer to the evidence? And, secondly, did it err in excluding the evidence of the physician attending the patient?

I. The rule is well settled as to a demurrer to the evidence, that if there is any evidence tending to prove the issues of fact, the case must go to the jury. *Smith v. Hutchison,* 83 Mo. 683; *Bowen v. Lazalere,* 44 Mo. 383; *Woods v. A. M. Ins. Co.,* 50 Mo. 112; 50 Mo. 149, 198; *Holliday v. Jones,* 59 Mo. 482; *Grady v. A. C. Ins. Co.,* 60 Mo. 116; 2 Greenleaf on Evidence, sec. 295. What are the issues of fact? The petition charges: "That after completing said repairs, said Reber and Groll ascended said ladders, but, before they arrived at the top of said cistern, the platform gave way, precipitating both said Reber and Groll to the bottom of said cistern. * * * That by said fall said Groll sustained serious injuries about his body and head; that after languishing for three and one-half months, he finally died."

There was a great mass of testimony, which it will not be necessary to set out, for the reason that very little of it refers to the charge in that part of the petition above set out. The only evidence upon this question seems to have been that of the witness, Reber, who tes-

tified, in substance, that he was engineer for defendant. Defendant was owner of a sterine tank. He then described it, showing that it was in a cistern under ground, etc. That it got out of fix and was leaking; that he went down to repair it, but found that he could not do it alone, and called the deceased, Groll, who was fireman, down to hold the light for him. He described the mode of getting down into the cistern, which was by means of two ladders, one leading down to a platform, and then another leading below to the bottom of the cistern. That the iron tank was inside the cistern, and there was a space all around the tank, and in this space the ladders went down as stated. He then proceeds: "After he came down and lighted up for me a little while, * * * it got too warm for me down there, and I said to him: 'Ed., this will hold, anyhow; it has got to be fixed different, anyhow, and I will leave.' I then put my caulking materials in my pocket, took one light, and started up, and Ed. did the same with his materials and light." He then proceeds to detail his going up the ladders, and his fall, etc., when plaintiff's counsel asked him: "Where was Groll at that time?" A. "While I was lying there and calling for help, * * * after being in there about five minutes, Groll called to me, and says he, 'Henry, I fell, too.'" Q. "Where was Groll when he spoke to you?" A. "He was down there too, but we could not see each other, on account of the lights being out and it being dark." Q. "When you had reached near the top of the upper ladder, where was Groll at that time?" A. "I can't exactly tell where he was, but he was behind me." Q. "Do you know where Groll was at that time?" A. "I can't tell exactly where he was, because I fell so very quick." Q. "Do you know whether or not you struck Mr. Groll in falling?" A. "No, sir; I don't know." There was much testimony, but none bearing upon the question presented by the above quotation from the petition.

The effort was made by counsel, as it will be seen in

the examination of Reber, to fix the whereabouts or locality of Groll at the time the accident occurred. The effort was made to show that Groll, at the time, was on the ladder and had commenced to ascend, but nothing of the kind is shown. The witness, Reber, evidently did not know where Groll was. He did not know whether he had started up or not. Reber says: "I then put my caulking materials in my pocket, took one light, and started up, and Ed. did the same with his materials and light." But he did not know whether Groll ever even reached the ladder or not. He only knew he was "behind me," but how far, or where? We might guess that he had started up and was immediately behind Reber, upon the second ladder, when it gave way, and we might, also, guess that, as a prudent man, he remained at the bottom, until Reber should get out. But we must not guess. The jury must be governed by evidence, and reasonable inferences therefrom. The petition alleges: "That by said fall, said Groll sustained serious injuries," etc. But we have seen that the evidence shows no fall, and if no fall, then a material averment remains not proven, without which there could be no recovery, even if there was any evidence which properly connected the illness and death of plaintiff's husband with the alleged fall and injury. We are driven to the conclusion that the plaintiff's evidence failed to make a case upon which to base a recovery, under the petition.

II. It is insisted, secondly, that the circuit court erred in excluding the testimony of the attending physician. Section 4017, Revised Statutes, reads as follows: "The following persons shall be incompetent to testify: * * *. Fifth, a physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." The court of appeals and the

circuit court held that under this clause of the statute the evidence of the attending physician was incompetent. The Michigan statute upon the same subject, is nearly identical with ours, and the supreme court of that state, in construing their statute, in *Grand Rapids & Indiana Railroad Co. v. Martin*, 41 Mich. 667, say: "The objection that a physician cannot reveal, with his patient's consent, what he has learned during his treatment, is one which, if valid, would render it impossible, in either civil or criminal cases, to use the only testimony which would show the nature and extent of disease. The statute is one passed for the sole purpose of enabling persons to secure medical aid without betrayal of confidence. It is only a question of privilege, and such communications are on the same footing with any other privileged communication, which the public has no concern in suppressing when there is no desire for suppression on the part of the persons concerned." In *Scripps v. Foster*, 41 Mich. 742, it was held that the object of the statute is to prevent the abuse of the confidential relation existing between the physician and his patient, and is for the protection of the latter.

The words of the New York statute are not the same as those of Missouri and Michigan, but convey the same meaning and provide the same privilege; and in *Pierson v. The People*, 18 Hun 239, it was held "that the object and intent of the provision of the code, was the protection of the patient and his representatives against the disclosure of information obtained by a physician in the course of his employment as such." This case was re-affirmed in *Slaunton v. Parker*, 19 Hun 55. In *Edington v. Mutual Life Insurance Company*, 67 N. Y. 185, it was held that the right to exclude the testimony prohibited, survives to the representatives *in the premises* of a deceased person. In *Cahen v. Continental Life Insurance Company*, 41 N. Y. Sup. Ct. 296, it is said: "The true position is, that the statute makes a peremptory rule, but as the rule is made

for the benefit of the patient, he may waive the right given to him. Until there is such a waiver, the law is as plain as words can be, that the physician shall not be allowed to testify." The same construction is maintained in *Johnson v. Johnson*, 4 Paige 460, and in *The People v. Stout*, 3 Park. Cr. Rep. 670.

Where the evidence of the attending physician is offered by the patient or his representatives, it is competent and admissible. Where it is offered by the opposite party, the physician cannot testify against the objection of the patient or his representatives. The cases referred to fully sustain this doctrine, and we think the rule is based upon substantial reasons. The case of *Gartside v. The Connecticut Mutual Insurance Company*, 76 Mo. 446, was, where the insurance company offered the testimony of the attending physician to prove that Gartside had had *delirium tremens*. This was objected to by the plaintiff, the wife of the deceased, and the objection was properly sustained. The case of *Harriman v. Stowe*, 57 Mo. 93, was a suit for damages resulting to Mrs. Harriman, one of the plaintiffs, by falling through a hatchway in a house of defendant. She offered her attending physician as a witness. The defendant objected because, under the statute, he was incompetent. The circuit court instructed the witness that he should not reveal any information received from the plaintiff while attending her in his professional capacity, which information was necessary to enable him to prescribe for her. In other words, the circuit court virtually sustained the objection. In commenting on this action of the circuit court, Wagner, J., said : "As the court restricted the witness from giving any information forbdden by the statute, the only inquiry is, whether the evidence was admissible on any other principle." While the question of the admissibility of the physician in that case was not discussed in the briefs of counsel, and, therefore, not made prominent in the decision of the court, yet it undoubtedly holds the statute is a bar to the introduction of the

attending physician, even in behalf of the patient him-self.   In this, we think, it is in conflict with the authori-ties upon the question, as well as with the reason of the rule.

From what has been said, it follows that the circuit court erred in excluding the attending physician as a witness, when he was offered by the representative of his patient.   Nevertheless, for the failure of the proof to sustain the allegations of the petition in other re-spects, the judgment of the court below must be affirmed. For, even though the physician had been permitted to testify as to the condition of the plaintiff, that would have made no case for the plaintiff, because of the lack of evidence upon the other question.

The judgment of the court of appeals is affirmed. All concur.