MARSHALL *et al.* v. HARNEY PEAK TIN MINING, MILLING & MANUF'G CO. *et al.*

1. On an application to take the case from the jury, whether by motion for a nonsuit, or the direction of a verdict, or by demurrer to evidence, the evidence of the opposite party must be assumed to be true, and he is to be given the benefit of all legitimate inferences therefrom in his favor.

2. The essentials to complete a mining claim, so as to vest in the claimant a statutory grant from the United States, are (1) discovery; (2) notice; (3) location; (4) marking boundaries; (5) record.

3. Discovery and appropriation are recognized as sources of title to mining claims; and development as the condition of continued ownership, until a patent is obtained.

4. Whenever preliminary work is required to define and prescribe a located mining claim, the law protects the first discoverer in the possession of the claim, until sufficient excavations and developments can be made, so as to disclose whether a vein or deposit of such richness as to justify work exists, up to the time limited by the statute for doing such work.

5. The question of abandonment of a mining claim is one of intention, and the intention is to be gathered from all the evidence and inferences from it. This is particularly within the province of a jury, to be determined from all the facts and circumstances of the case, and is not a question for the court.

(Syllabus by the Court. Argued Feb. 8, 1890. Opinion filed Dec 3, 1890.)

Appeal from district court, Pennington county, Hon. CHARLES M. THOMAS, Judge.

Action of ejectment to recover possession of certain mining ground claimed by the parties under conflicting locations and for equitable relief. Verdict for the defendants directed by the court, and judgment entered accordingly. Plaintiff appeals. Reversed and remanded for a new trial.

*Van Cise* and *Wilson* and *Schrader* and *Lewis*, for appellants.

The plaintiffs as discoverers of the lode had sixty days from the date of discovery in which to complete their location and record their claim. Comp. Laws, §§ 1999, 2001, 2003, 2004; Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. Rep. 560· Omar v. Soper, 18 Pac. 443; Mining Co. v. Snodgrass 12 Pac. 206; Gleason v. Martin White Co., 13 Nev. 442. The plaintiffs' notice constituted an appropriation of the territory described therein for the period of 60 days, and the entry of any one during that period for the purpose of making an adverse location was a mere trespass. Golden Terra Case, 2 Dak. 377; Belk v. Meagher, 104 U. S. 284; Mining Co. v. Vacavich, 7 Sawyer 217; Rose v. Mining Co., 17 Nev. 25. The party through whom the defendants claim their right to the ground in question having actual notice of plaintiffs' claim record of that claim was not necessary as against them. §2324 U. S. Revised Statutes; § 1999 Comp. Laws; "Jupiter mining Co. v. Bodie Mining Co., 7 Sawyer 96," (11 Fed. Rep. 666); Bell v. Funnel Co., 36 Cal 219; Johnson v. McLaughlin, 4 Pac. 130.

If, as contended by defendants, diligence on the part of plaintiffs was necessary, then the question of diligence and as to whether plaintiffs' acts constituted diligence was one for the jury and it was error to take the case from the jury and direct a verdict. Weaver v. Eureka, Lake Co., 15 Cal. 271; Moore v. Westervelt, 21 N. Y. 103. The question of abandonment was one for the jury. Weill v. Mining Co., 11 Nev. 2^0; Taylor v. Middleton, 67 Cal. 656.; Van Schaick v. Railroad, 38 N. Y. 346.

*James W. Fowler* and *W. R. Steele*, for respondents.

The provisions of §§ 1999, 2001, 2002, 2003 and 2004, of the Compiled Laws of Dakota relating to mining claims are mandatory. The mere going of plaintiffs upon the proposed claim and putting thereon a notice and then leaving the claim and failing to return thereto until after a valid location had been made by another claimant was not a compliance with the provisions of these statutes. The locator must show his good faith by proceeding with reasonable diligence to perform the

acts by which the grant under the act of congress becomes operative and to complete his location.    Patterson v. Hitchcock, 3 Col 533; Murray v. Ennis, 12 Morrison 365.    An adverse claimant making an honest compliance with the statute will be entitled to the location.    Phares v. Muldoon, 76 Cal. 286; Newbil v. Thurston, 65 Cal. 420; Gregory v. Pershbaker, 73 Cal. 418; Gelcich v. Moriarity, 9 Morrison 498.    The facts as to plaintiffs' compliance or non-compliance being undisputed and admitted that question became one of law for the court, and it was not error for him to take the case from the jury. Wiggins v. Burkham, 10 Wall. 129; Leaming v. Wise, 73 Pa. 175; Morgan v. McKee, 77 Pa. 228; Druse v. Wheeler, 26 Mich. 189; Nudd v. Wells, 11 Wis. 437.

BENNETT, J.    This was an action of ejectment brought by appellants against respondents to recover possession of 750 feet of mining ground claimed by the parties under conflicting locations.    A count for equitable relief was joined, and at the close of the testimony, when both sides had rested, the defendants' counsel moved the court to instruct the jury to return a verdict for defendants.    The motion was sustained, and the ruling was duly excepted to.    The jury returned a verdict for the defendants, and judgment was entered accordingly, from which judgment the plaintiffs appeal.

At the threshold of the case we are met in this court with a motion to dismiss the appeal for irregularity in the notice of appeal and the undertaking. . This will command our attention first.    The notice of appeal is as follows:  ·"Territory of Dakota, first judicial district.    In district court in and for the county of Pennington, D. T.    Benjamin F. Marshall, et al., Plffs. and Appellants, vs. Harney Peak Tin Mining, Milling & Manufacturing Company, Deft. and Respondent.    Please take notice that the plaintiffs, Benjamin F. Marshall, et al., in the above entitled action appeal from a judgment entered therein on the 17th day of November, 1887, in favor of the respondents against the appellants, dismissing the complaint on the merits of the action, and for four hundred seventeen dollars and ninety cents costs, and also from the order overruling the plaintiff's motion

for a new trial to the supreme court of the territory. Schra-
der & Lewis, Van Cise & Wilson, Attorneys for Appellants.
To J. W. Fowler and McLaughlin & Steele, Attys. for Respon-
dent, and Beale E. Padgett, Esq., Clerk of the District Court
of the County of Pennington." The notice of appeal was ac-
companied with an undertaking. The objections made to the
notice of appeal apply to the undertaking, but it need not be
set out in full to consider them. The motion to dismiss is based
upon the following grounds: *First*, that no notice of appeal
has been served as provided by law; *second*, that no undertak-
ing has been made, served, or filed as provided by law. The
objections of respondents are directed to the irregularities in
the notice of appeal, mainly relating to the style of the case
appealed from, and the reference to the plaintiffs in the body
of the notice. The title of the case in the notice of appeal is
"Benjamin F. Marshall, *et al.*, Plffs. and Appellants, vs. Har-
ney Peak Tin Mining, Milling & Manufacturing Company,
Deft. and Respondent." In the body of the notice of appeal, it
says: "Please take notice that the plaintiffs, Benjamin F.
Marshall, *et al.*, in the above entitled action appeal from a
judgment entered therein on the 17 day of November, 1887, in
favor of respondents against the appellants," etc. By refer-
ence to the transcript, it appears that a cause was filed in the
Pennington county district court, entitled "Benjamin F. Mar-
shall, Edward Cunningham, and William Franklin, Plaintiffs,
vs. The Harney Peak Tin Mining, Milling & Manufacturing
Company and Stephen W. Fullerton, Defendants." In due
course of time, the cause came on for trial, and a judgment was
rendered, under the direction of the court, "in favor of said de-
fendants," the Harney Peak Tin Mining, Milling & Manufac-
turing Company, upon the issues, and that the defendants have
and recover of and from said plaintiffs the costs of the action,
amounting to the sum of $417.90. It is from this judgment
that the appellants wish to appeal. The respondents insist
that the notice of appeal does not mention all of the plaintiffs,
or all of the defendants, in the action in the court below, and is

therefore defective.    The judgment dismissing the complaint on the merits is for the defendant, the Harney Peak Tin Mining, Milling & Manufacturing Company by name, and for it solely.   So also is the judgment quieting title, and for possession of the property.   The award for costs is to the defendants. This, no doubt, under ordinary circumstances, would relate to all the defendants in the case, and Stephen W. Fullerton, being one of the defendants, would have an interest in the determination of the suit, and be an interested party in the appeal.   The judgment in the court below, so far as the costs of the suit were concerned, was in his favor, and a reversal of the judgment upon appeal might affect his rights to this extent.   He was an adverse party, upon whom notice of appeal should be served. Has a service been made upon him?   As a service upon an attorney of record of the party is sufficient, we must hold that there has been.   All the defendants in the case appeared by J. W. Fowler, Esq., their attorney.   Their answer is signed by him.   The notice of appeal is served upon him, and he admits it over his signature.   But respondents insist that inasmuch as the name of Samuel W. Fullerton, as one of the defendants, was omitted from the title of the notice of appeal, the notice not being directed to him, the admission of service could have no binding effect, except as to the Harney Peak Tin Mining, Milling and Manufacturing Company, the defendant named. The answer of the defendants in the court below was a general one.   No separate answer of defendant Fullerton was filed. His appearance there was in connection with the Harney Peak Tin Mining, Milling and manufacturing Company; and in the answer he disclaimed any interest in the issues before the court. and, so far as they were concerned, he could have been left out of the case entirely.   His interest, if any, in the appeal is only as to the costs, and while it is true that Fullerton has not been expressly named in the caption as defendant and respondent, yet the body of the notice of appeal sufficiently refers to the judgment, and the date of its rendition, and the court in which it was rendered, so that the respondents are intelligently in-

formed from what, and for what, the appeal is taken, and no mistake can be made as to the intent of the appellant.

Again, it appears from the record that the defendants have appeared in this appellate tribunal and submitted to continuances by stipulations signed by their attorneys, and to other proceedings, and by filing briefs upon the merits of the appeal. While it is true that service of the notice of appeal is a jurisdictional question, which can be taken advantage of at any time, yet these positive acts of submission to this court must be considered as appearance sufficient to give this court jurisdiction of the appeal. We must say, however, that we have arrived at this conclusion with some degree of hesitation and doubt, but owing to the large amount of interests involved in the action, and the further fact that, should this motion be sustained, more than two years having elapsed since the rendition of the judgment, the right of appeal to the plaintiff would be barred by the statute of limitations, we have concluded to give the benefit of the doubt to the appellant, with the cautionary admonition to parties litigant and their attorneys to be more careful and painstaking in drafting and serving jurisdictional papers, as the rule is that these are to be strictly construed. Motion to dismiss overruled.

Upon the merits of the appeal, the question is whether the plaintiffs' evidence made such a case as should go to the jury, or whether the undisputed evidence required a verdict for defendants, conceding to plaintiffs' disputed evidence all the weight that could be given to it, and every reasonable presumption arising from it. The general rule is that on an application to take the case from the jury, whether by motion for a nonsuit, or the direction of a verdict, or by demurrer to evidence, the evidence of the opposite party must be assumed to be true, and he is to be given the benefit of all legitimate inferences therefrom in his favor. Myers v. Dixon, 45 How. Pr. 48; Cook v. Railroad Co., 1 Abb. Dec. 432; Maynes v. Atwater. 88 Pa. St. 496; Walker v. Supple, 54 Ga. 178–180; Parks v. Ross, 11 How. 373; Purcell v. English, 86 Ind. 34; Christie v. Barnes, 33 Kan. 317, 6 Pac. Rep. 599. Inasmuch as this

rule is not generally accepted or followed by the bar of this state, we have concluded to somewhat elaborate the principles upon which it is based by citation of authorities. Judge Thompson, in his able work on Trials, § 2267, says: "The demurrer to evidence, used in the ancient common law practice, seems to have passed, for the most part, out of use in American jurisdictions. In the place of it, the defendant moves for a nonsuit, or requests the court to give a peremptory instruction to the jury to return a verdict for the defendant. In either case, the effect is substantially the same as a demurrer to the evidence under the ancient practice. An order of nonsuit, or a peremptory instruction, given in compliance with such a motion, does not undertake to decide any question of fact, but simply pronounces the law arising upon the evidence, admitting the same to be true. * * * Like the ancient demurrer to evidence, a motion for a judgment of nonsuit, or for a peremptory instruction to return a verdict for the defendant, admits everything which the evidence fairly tends to prove, but challenges its sufficiency in law." Citing Railroad Co. v. Lewis, 109 Ill. 121; Stone v. Railroad Co., 47 Iowa, 82; Wolf v. Washer, 32 Kan. 533, 4 Pac. Rep. 1036; Bequillard v. Bartlett, 19 Kan. 382; Doane v. Lockwood, 115 Ill. 490, 4 N. E. Rep. 500. Everything will be taken against the party demurring or making the motion to direct a verdict, which the evidence tends to prove, including every fair inference of fact deducible therefrom. Nordyke & Marmon Co. v. Van Sant, 99 Ind. 188; Talkington v. Parish, 89 Ind. 202. The court is required to make every inference of fact in favor of the party offering the evidence which the jury might, with any degree of propriety, have inferred in his favor; and if, when received in this light, it is insufficient to support a verdict in his favor, the demurrer, or the motion to direct, should be sustained. Buesching v. Gas-Light Co., 73 Mo. 219; Smith v. Hutchinson, 83 Mo. 683. In the case of Randall v. Railroad Co., 109 U. S. 482, 3 Sup. Ct. Rep. 322, Justice GRAY, delivering the opinion of the court, says: "It is the settled law of this court that when the evidence given at the trial, with all

inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." This was a case where, at the conclusion of the whole evidence of both plaintiff and defendant, the court directed the verdict for the defendant. The same rule is reported in the case of Marshall v. Hubbard, 117 U. S. 418, 6 Sup. Ct. Rep. 806, by Justice HARLAN. This also is a case where the direction was made when all the evidence had been introduced. Conceding the rule to be as above enunciated, and which we think is correct, let us examine the facts as shown by the plaintiff's evidence. This case arose between rival claimants for the same piece of mining ground. Plaintiffs assert title under a location called the "You Bet," initiated by discovery, as they allege, made July 31, 1884. The defendants assert their title, under a location as they allege, made by George W. Coates, on the 19th day of September, 1884. Now, what is the evidence of the plaintiffs?

(1) That they were citizens of the United States on July 31, 1884. (2) That on that day, Benjamin F. Marshall, in company with Edward Cunningham, went upon unoccupied public land, and discovered a vein or lode of quartz or other rock in place, carrying tin. (3.) That these two plaintiffs on the day of the discovery uncovered and disclosed the lode, and sunk a discovery shaft on this unoccupied public land, two feet long, from twelve to fifteen inches in width, and from twelve to eighteen inches in depth, sufficient to show a well defined mineral vein or lode. (4) That on the same day they blazed a tree standing at the point of their discovery, and close to where they had dug the small shaft above described, and on this tree wrote a plain sign or notice, as follows: "Notice. We, the undersigned, claim 750 feet northwesterly from this stake, and 750 feet southeasterly from this stake, and 150 feet on each side from the center stake along this vein or lode. We claim this by right of discovery and location. This claim will be known as the 'You Bet Lode.' Date of discovery, July 31,

1884. B. F. MARSHALL & Co." (5) That the words "& Co." were intended to include Edward Cunningham and William Franklin. (6) That on the same day the plaintiffs panned out some of the ore, and found it contained tin. The general course of the vein was southeasteasterly and northwesterly, as indicated in the discovery notice. (7) That plaintiff did no more work, and were not upon the You Bet lode again, until September 21 or 22, 1884, when, having heard that one Coates, or parties in his interest, were trespassing upon their claim they returned, and on the 21st or 22d of September, 1884, marked the surface boundaries of their claim by eight substantial monuments, fixed firmly in the ground, one of which was a post, and the remaining seven were pine trees, hewed or blazed on the sides facing the claim, and plainly marked with the name of the lode and the corner, and one at the center of the side lines, and one at the center of the end lines. (8) On the 28th day of September 1884, plaintiff B. F. Marshall filed for record the You Bet claim at the office of the register of deeds of Pennington county, by a location certificate, which was introduced in evidence. Subsequently on the 29th day of October, 1887, an additional and amended location certificate was filed for record by plaintiffs in the office of the register of deeds of Pennington county, which was also introduced in evidence. That in 1885, and every year since, more than $100 worth of work and labor were done by plaintiffs on the You Bet lode. There was also testimony on the plaintiff's behalf as to the notice posted on the ground in 1884, and of the warning given to the defendants against trespassing on the grounds in dispute. This is substantially the testimony of the plaintiffs.

The portions of our statute which bear upon the subject-matter of this controversy are found in Sections 1999, 2001, 2003 and 2004 of the Compiled Laws, and are as follows: "The discoverer of a lode shall, within sixty days from the date of discovery, record his claim in the office of the register of deeds of the county in which such lode is situated by a location certificate, which shall contain the name of the lode, name of locator, date of location, number of feet in width and length claimed

by locator." "(1) Before filing such location certificate, the discoverer shall locate his claim by first sinking a discovery shaft thereon sufficient to show a well defined mineral vein or lode; (2) by posting at the point of discovery, on the surface, a plain sign or notice containing the name of the lode, the name of the locator or locators, and the date of discovery, the number of feet claimed in length on either side of the discovery, and the number of feet in width claimed on each side of the lode; (3) by marking the surface boundaries of the claim." "Any open cut, cross-cut or tunnel at a depth sufficient to disclose the mineral vein or lode, or an adit of at least ten feet in along the lode, from the point where the lode may be in any manner discovered, shall be equivalent to a discovery shaft. The discoverer shall have sixty days from the time of uncovering or disclosing a lode to sink a discovery shaft thereon." It will be seen by the above requirements that the essentials to complete a mining claim, so as to vest in the claimant a statutory grant from the United States, are (1) discovery; (2) notice; (3) location; (4) marking boundaries; (5) record. The first is perhaps the most important, the act of congress providing that "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." The testimony of the plaintiffs shows that they did make the discovery, uncovered and disclosed the lode, and placed at the point of discovery a notice as required by the statute; and, until the expiration of sixty days, their claim was a valid, subsisting mining claim by reason of this discovery. The notice posted notified any one coming within the limits described by that notice, for the purpose of making another location, that there had been a previous location; and if they attempted to occupy any portion or all of that ground described within the limits of the notice, they would be trespassers. In all legislation, whether by congress or the state or territory, and by all mining regulations and rules, discovery and appropriation are recognized as the sources of title to mining claims, and development, by working, as the condition of continued ownership, until it is obtained. Whenever preliminary work

is required to define and describe the claim located, the first discoverer must be protected in the possession of the claim until sufficient excavations and developments can be made so as to disclose whether a vein or deposit of such richness exists, as to justify work to extract the metal. The notice of plaintiffs of July, 1884, constituted an appropriation of the territory specified for the period of sixty days; and if the location of Coates was a portion of that territory, or all of it, and was made before the sixty days had expired, it was not a valid location, and he could acquire no right by reason of it. Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. Rep. 560, 8 Fed. Rep. 860; Omar v. Soper, 18 Pac. Rep. 443, 11 Colo. 380. The case of Erhardt v. Boaro arose in Colorado, under a statute identical with our own, with the exception that the claimant had ninety days instead of sixty to file his location certificate in the office of the register of deeds, and that the notice posted on the claim need not state the width on each side of the point of discovery. Plaintiffs brought their action at law in the circuit court of the district of Colorado for possession, alleging that they were the discoverers thereof, had planted their discovery stake, and, within the sixty days allowed in which to complete the sinking of their prospect shaft, and make their formal location, the defendants wrongfully entered and hold the claim. On the part of the defendants, it was claimed that the plaintiffs were not in actual possession of the claim from the time of setting their stake and the time the defendants entered, and, further, that the notice was not sufficient. Justice MILLER, delivering the opinion of the court, (8 Fed. Rep. 692), says:

"The law of the state gives sixty days after making discovery of mineral in which to sink a shaft ten feet in depth. The main object of the sixty days' possession, it seems to the court, must be to allow time to discover the course of the lode, in order that the location may be made thereon. Counsel for defendants made an ingenious argument to show that the locator during those sixty days, to hold his right, must remain in continuous actual possession of the ground. The court does not

so hold.   If the discoverer put up a stake at the discovery, giving the name of the lode, date of discovery, and notice of his intention to locate the claim, this is equivalent to actual possession.   Otherwise the statute serves no useful purpose.   The intention of the statute must be that the setting up of the discovery stake, with the notice thereon, as required, is equivalent to actual possession for the sixty days within which he may proceed to the next step, to-wit, sink the discovery shaft to the depth of ten feet, have survey made, mark the lines, and make formal location."   This case was taken to the United States supreme court, and is reported in 113 U. S. 537, 5 Sup. Ct. Rep. 565.   Upon the sufficience of the notice to hold more than the immediate ground about discovery hole, Justice FIELD reverses the court below; but upon the main points of the case it is sustained.   It being a very important case, and one strongly in point, and the opinion being prepared by a jurist of known legal learning in relation to mining laws, we have taken liberal and copious extracts from it, as meeting and expressing our views in construing our own law relating to mining claims.   Justice FIELD, in delivering the opinion, says: "These excavations are to be made within sixty days after the discovery.   Then the location must be distinctly marked on the ground, so that its boundaries can be readily traced, and within one month thereafter, that is, within three months from the discovery, a certificate of the location must be filed for record in the county in which the lode is situated, containing the designation of the lode, the names of the locators, the date of the location, the number of feet claimed on each side of the center of the discovery shaft, the general course of the lode, and such a description of the claim, by reference to some natural object or permanent monument, as will identify it with reasonable certainty.   Rev. St. §2324; Gen. Laws, Colo. §§ 1813, 1814.   But during the intermediate period, from the discovery of the lode or vein and its excavation, a general designation of the claim by notice, posted on a stake placed at the point of discovery, such as was posted by Carroll, stating the date of the location, the extent of the ground claimed, the des-

ignation, of the lode, and the names of the locators, will entitle them to such possession as will enable them to make the necessary excavations, and prepare the proper certificate for record. The statute of Colorado requires that the discoverer, before a certificate of location is filed for record, shall, in addition to posting the notice mentioned at the point of discovery, sink a shaft upon the lode to the depth of at least ten feet from the lowest part of such shaft under the surface, or deeper if necessary, to show a defined crevice, and to mark the surface boundaries of the claim."

Upon the other issues as involved in the case, the court says: "The government of the United States has opened the public mineral lands to exploration for the precious metals, and, as a reward to the successful explorer, grants to him the right to extract and possess the mineral within certain prescribed limits. Before 1866, mining claims upon the public lands were held under regulations adopted by the miners themselves in different localities. These regulations were framed with such just regards for the rights of all seekers of the precious metals, and afforded such complete protection, that they soon received the sanction of the local legislatures and tribunals; and, when not in conflict with the laws of the United States, or of the state and territory in which the mining ground was situated, were appealed to for the protection of miners in their respective claims, and the settlement of their controversies. And although since 1866 congress has to some extent legislated on the subject, prescribing the limits of location and appropriation and the extent of mining ground which one may thus acquire, miners are still permitted in their respective districts, to make rules and regulations not in conflict with the laws of the United States or of the state or territory in which the districts are situated, governing the location, manner of recording, and amount of work necessary to hold possession of a claim. Rev. St. § 2324. In all legislation, whether of congress or of the state or territory, and by all mining regulations and rules, discovery and appropriation are recognized as the sources of title to mining claims, and development, by working, as the condi-

tion of continued ownership, until a patent is obtained. And whenever preliminary work is required to define and describe the claim located, the first discoverer must be protected in the possession of the claim until sufficient excavations and development can be made, so as to disclose whether a vein or deposit of such richness exists as to justify work to extract the metal. Otherwise, the whole purpose of allowing the free exploration of the public lands for the precious metals would in such cases be defeated, and force and violence in the struggle for possession, instead of previous discovery, would determine the rights of claimants. It does not appear in this case that there were any mining regulations in the vicinity of the 'Hawk Lode,' which affect in any respect the questions involved here. Had such regulations existed, they should have been proved as facts in the case. We are therefore left entirely to the laws of the United States and the laws of Colorado on the subject. And the laws of the United States do not prescribe any time in which the excavations necessary to enable the locator to prepare and record a certificate shall be made. That is left to the legislation of the state, which, as we have stated, prescribes sixty days for the excavations upon the vein from the date of discovery, and thirty days afterwards for the preparation of the certificate and filing it for record. In the judgment of the legislature of that state, this was reasonable time."

As to location, the language of the act of congress is peculiar. Section 2324, Rev. St. U. S., is: "The miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws of the state or territory in which the district is situated, governing the location, manner of recording, and amount of work necessary to hold possession of a mining claim, subject to the following requirements: The location must be distinctly marked on the ground, so that its boundaries can be readily traced; * * * and, until a patent has been issued, $100 worth of work shall be performed each year," etc. The statute of the Territory of Dakota, in addition to the above, required that "the discoverer of a lode shall, within sixty days from date of discovery, record

his claim." The evidence discloses that the mining claim was situated in Carr Gulch, in Hill City mining district, in Pennington county, Dakota territory, but it is not shown that this mining district had any special rules or regulations governing location of mining claims different from the law of congress or the territory. So we must presume there was none, and the legal effect of this location must be determined by the facts applied to the laws above cited. As will be seen, a location certificate, as above recited, was filed by plaintiffs for record in the office of the register of deeds of Pennington county on the 24th day of September, 1884, and subsequently on the 29th day of October, 1884, an additional and amended location certificate was also filed by them in the same office. Were either one or both of these certificates of location filed within the time required by law? And were the surface boundaries marked by substantial posts, as required by law? The fact disclosed by the testimony of plaintiffs—and for the purposes of this appeal it must be taken as true—is that on the 31st day of July, 1884, they discovered the claim in question. They had then until the 29th day of September, 1884, to mark the surface boundaries of the claim, and to record it. The testimony of Marshall is that he and plaintiff Cunningham, on the 21st or 22d of September, 1884, did go on the claim, and on that day did distinctly mark the surface boundaries by eight substantial monuments, one of which was a post, and the remaining seven were pine trees, hewed and blazed on the sides facing the claim, and plainly marked with the name of lode and the corners, all of which were firmly planted in the ground—one at each corner, one at the center of each side line, and one at each end of the lode. The plaintiffs' testimony on this point is certainly a good *prima facie* showing of the statutory location and record, and a substantial compliance with the requirements of the law. The contention of defendants, no doubt, was that plaintiffs had abandoned their claim, and that their grantor, Geo. W. Coates, had a right to relocate it, or any part of it. If this were so, the question of abandonment is one of intention, and the intention is to be gathered from all the evidence and inferences from it. This

is peculiarly within the province of the jury, to be determined from all the facts and circumstances of the case, and is not a question for the court.   Weill v. Mining Co., 11 Nev. 212; Mallett v. Mining Co., 1 Nev. 188; Taylor v. Middleton, 67 Cal. 656, 8 Pac. Rep. 594; Myers v. Spooner, 55 Cal. 257.   If there was a conflict or a doubt as to the date of the discovery or location notice, this could not have been taken from the jury, Whether it was July 31, 1884, as sworn to by plaintiffs' witnesses, or June 10th, as sworn to by defendants' witnesses, it was a question for the jury to say.   An alleged alteration of a date is always a question for the jury, if there is any conflict as to the fact, or in the testimony, on that point.   Insurance Co. v. Bair, 82 Pa. St. 33.   In any view of the case, we think the court erred in directing a verdict for the defendants, and for this error the judgment must be reversed, and the cause remanded for a new trial.

Reporter:   An order granting a rehearing of this case was made by the court January 30, 1891.   Upon the rehearing the foregoing opinion of the court was adhered to and the case remanded for a new trial. (54 N. W. 272. )