BARBARA LINZ, Appellant, *v.* MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Respondent.

### February 17, 1880.

1. A physician is, under the statute, incompetent to testify to any facts acquired by him through his relation as such to his patient, which information was necessary to enable him to treat his patient, whether the knowledge be gained from statements or examination of the patient.

2. Where the facts sought to be elicited are so superficially apparent that in regard to them no confidence could have been reposed, the statutory exemption does not apply.

3. The statutory provision imposing a condition upon a defence based upon misrepresentation, in actions upon insurance policies, is void as to its retrospective clause.

4. Where a life-insurance policy provided that it shall be void if the statements therein made by the insured be untrue in any respect, the statements made as to the age of the insured are properly treated as warranties.

5. If the action of the trial court be found to be erroneous in respect to either of two branches of a defence, this is sufficient ground for a reversal.

APPEAL from the St. Louis Circuit Court.

*Reversed and remanded.*

KEHR & TITTMANN, for the appellant: There was error in permitting the physicians to testify to information acquired while attending George Linz in their professional capacity.— *Edington* v. *Insurance Co.*, 5 Hun, 1; *s. c.* 67 N. Y. 185–194; *Edington* v. *Insurance Co.*, 13 Hun, 543–549; *Cohen* v. *Insurance Co.*, 41 N. Y. 296; *Johnson* v. *Johnson*, 4 Paige, 460; *The People* v. *Stout*, 3 Park. Cr. 670; *Harris* v. *Rupal*, 14 Ind. 209. Laws are presumed to be constitutional unless they manifestly infringe some provision of the Constitution. — *The State* v. *Railroad Co.*, 48 Mo. 468; *The State* v. *Able*, 65 Mo. 357; *In re Burris*, 66 Mo. 442; *McCulloch* v. *Maryland*, 4 Wheat. 306; *Ogden* v. *Saunders*, 12 Wheat. 270; *Sun Ins. Co.* v. *City of New York*, 5 Sandf. 10. Laws changing the remedy are not unconstitutional, and laws which change the rules of evidence relate to the remedy only. — Cooley's Const. Lim. (3d ed.) 286–289; *City* v. *Œters*, 36 Mo. 463; *Hope Ins. Co.* v. *Flynn*, 38 Mo. 484; *Edmonson* v. *Ferguson*, 11 Mo. 346; *Bruno* v. *Crawford*, 34 Mo. 330; *Dinnell* v. *Stevens*, 35 Mo. 441; Smith on Stat. & Const. Law, 387, 388, sects. 254, 266. In order to make any statements binding as warranties, they must appear upon the face of the policy itself. If not so set out, they are not warranties, but representations. — Bunyon on Life Assur. 34; May on Life Ins., sect. 159; *American Ins. Co.* v. *Day*,

39 N. J. L. 93; *Miller* v. *Insurance Co.*, 31 Iowa, 231; *Campbell* v. *Insurance Co.*, 98 Mass. 381–393.

EDWARD WHITE, for the respondent: Where an instrument is partly printed and partly written, — that is, where it is printed, with blanks which are afterwards filled up, — and the question arises as to which a preference should be given, the answer is, to the written part. — 2 Pars. on Con. (6th ed.), sects. 516, 517; *Harper* v. *Insurance Co.*, 17 N. Y. 194; *Benedict* v. *Insurance Co.*, 31 N. Y. 389; *Phœnix Ins. Co.* v. *Taylor*, 5 Minn. 492; *Hayward* v. *Insurance Co.*, 19 Abb. Pr. 116; *Forbes* v. *Insurance Co.*, 15 Gray, 249; *Reynolds* v. *Insurance Co.*, 47 N. Y. 597. The rule as to the exclusion of testimony on the ground of privilege should be strictly construed.—*Satterlee* v. *Bliss*, 36 Cal. 489; *The State* v. *Collins*, 67 Mo. 380; *Edington* v. *Insurance Co.*, N. Y. Ct. App. —. A statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past, is to be deemed retrospective or retroactive.— *White* v. *Insurance Co.*, 5 Cent. L. J. 486; Sedgw. on Stat. & Const. Law, 188; *Hope Ins. Co.* v. *Flynn*, 38 Mo. 483. Any deviation from its terms, by imposing conditions not expressed in the contract, however minute and apparently immaterial in their effect, is within the constitutional provision. — *Winter* v. *Jones*, 10 Ga. 190; *Green* v. *Biddle*, 8 Wheat. 85; *Howard* v. *Bugbee*, 24 How. 461; *Tenett* v. *Taylor*, 9 Cranch, 43; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; 2 Story on Const. (2d ed.), sect. 1385. After a contract is complete, it impairs its obligation to impose conditions. — *Robinson* v. *Magee*, 9 Cal. 81. Where the verdict is for the right party on the whole record, the Supreme Court will not reverse the case though error has been committed. — *Tate* v. *Bancroft*, 1 Mo. 163; *Wear* v. *McCorkle*, 1 Mo. 588; *Crocker* v. *Mann*, 3 Mo. 472; *Orth* v. *Dorschlein*, 32 Mo. 366. Even though improper evidence has been admitted. —*Gar-*

*esché* v. *Dean*, 40 Mo. 168 ; *Ridgway* v. *Kennedy*, 52 Mo.
24. Where a verdict is required by the testimony, inde-
pendent of illegal evidence which has been admitted, a new
trial will not be ordered. — *Tomlinson* v. *Driver*, 53 Ga. 9 ;
*Ganard* v. *The State*, 50 Miss. 147 ; *Shacklett* v. *Ransom*,
54 Ga. 350. A new trial will not be ordered in a case
where, if granted, the second trial must necessarily have
the same result as the first, even though there was manifest
error in admitting certain evidence on the first trial. — *Sco-
field* v. *Lockwood*, 35 Conn. 425 ; *Hedecker* v. *Ganzhorn*,
50 Mo. 154 ; *Jackson* v. *McGruder*, 51 Mo. 55. For these
reasons, and upon these authorities, we claim that there
should be no reversal of this case unless errors have been
committed affecting both of respondent's defences.

HAYDEN, J., delivered the opinion of the court.

This is an action on a policy by which the defendant in-
sures " the life of George and Barbara Linz in the amount
of $2,000," payable to the survivor of them. George Linz
died, and the plaintiff, the widow, brings suit. The defences
are, that the deceased had become so intemperate as to seri-
ously impair his health and induce *delirium tremens*,
whereby his policy by its terms became void ; and that the
assured in their application represented the age of the de-
ceased to be thirty-four years, when in fact it was forty
years. There was judgment below for the defendant.

There can be no serious doubt as to the construction of the
clause, " in case the said person whose life is hereby insured
shall    *    *    *    become so far intemperate as to impair
his health seriously and permanently, or induce *delirium
tremens*, . *    *    *    this policy shall thereupon terminate,
and be void and of no effect." The policy is payable to
the survivor of the two, ninety days after due notice and
proof of the death of either of them. There is no uncer-
tainty here, nor need intemperance on the part of both per-
sons be shown to establish a breach. If Barbara Linz had

died first, the habits of her husband would not have been in question. By the terms of the policy, in the event that one dies before the other, — and this the policy anticipates and provides for, though they might die together, — the one dying, and not the other, becomes the subject of insurance. That the subject was contingent does not prove two persons were insured.

It is objected by the plaintiff that physicians were allowed to testify upon the trial as to information which they obtained from George Linz while he was their patient and they were attending him in a professional capacity. The rule which the court below adopted appears from the directions which the court gave to Dr. Spiegelhalter, when objection was made by the plaintiff to the question whether, from the witness's observations of the symptoms he saw in his patient, the witness could state from what disease the patient died. The court said: "You may state without regard to anything that he (the patient) may have said to you, without regard to any information which you may have derived from him. If the information you are about to give is in any manner founded upon information which you derived from a statement of the patient to you, you will not answer the question." Comparing this ruling with the statute, we find the words are (sect. 8): " The following persons shall be incompetent to testify :   *   *   *   fifth, a physician or surgeon concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon."

Not so much because it is in derogation of the common law as because it is in exclusion of the best evidence on the ground of privilege, this exaction should be carefully limited to what the statute requires. In proportion as the sources of the best evidence are closed to courts of justice, will be the inability of those courts to render judgments that

are morally satisfactory even to themselves.   The extension
of the domain of privilege — whether placed upon the
method of communication, as in case of the fancied inviola-
bility of telegrams, or upon more plausible grounds of
analogy to common-law exceptions — should be carefully
watched by the courts.   Yet when the exemption rests
upon something tangible, as in the case of a statutory pro-
vision, the courts are bound to consider the intent of the
Legislature and to apply well-settled rules of construction.
True, in the clause just quoted we are not authorized to in-
sert the word " oral " before the word " information," so as
to make the words read, " concerning any oral information,"
etc.   Information may be communicated otherwise than by
the voice ; and the patient who, being urged by his necessi-
ties, exposes parts of his person where a secret disease
lurks, is certainly entitled to the protection of the statute,
unless for the purpose and intent of the Legislature we
are to substitute the immaterial incident of vocal communi-
cation.   It is the acquisition of information through the me-
dium of professional attendance that is the essential thing.
When the patient submits his person to the physician,
no word may be necessary ; and if necessary, this makes
no difference, since in both cases the information is ac-
quired from the patient.   It is only when the information is
such as is apparent on that casual inspection which any one
might make, without disclosure of any kind on the part of
the patient, that it can fairly be said that there was no in-
formation acquired from the patient under the conditions
expressed in the statute.   All the words of the statute must
receive their due force ; and that construction is worthless
which disregards the peculiar significance of the word " in-
formation," and refuses to give any meaning to the phrase —
peculiar to our statute and inserted, no doubt, *ex industria* —
" from the patient."   There must be information ; it must be
from the patient, — which indicates disclosure, or at least
submission, on the patient's part, — and the information

must be acquired from the patient while attending him in a professional character.   It is evident that a physician will often have knowledge of his patient that is not information thus acquired ; and if so, it does not promote the exclusion, that his outside knowledge is " information necessary to enable him to provide for such patient as a physician."   All the conditions of exclusion must exist, and, one failing, the presence of the others amounts to nothing.   It is a direct violation of the statute to say that a physician, because he has attended the patient, shall not testify at all.   It is the relation of physician and patient that is the reason and the basis of the whole exclusion ; and the bridge ought not to be broader than the flood.   When this relation is not involved, — and the burden is on the objector to show that it is, — the first condition is not met.   What occurs outside that relation, or before the patient submits himself to the physician or the latter addresses himself to his duty, is not excluded, else the basis of exclusion is altered and the statute extended.   Thus, objective signs which are obvious on such an observation as implies no disclosure, — symptoms which are apparent before the patient submits himself to any examination,— the statute gives no authority for excluding. That a patient had an inflamed face, a bloodshot eye ; that fumes of alcohol proceeded from his person ; that he talked deliriously, could be excluded only on the basis that the statute forbids a physician to be a witness.   These objective signs, and others which imply no knowledge obtained as the result of submission or exposure by the patient, and which would be apparent before the initial act of service on the physician's part, the latter should testify to under our statute.   It is not an objection to this view that the trained eye of a physician might thus detect sure signs of the existence of a given disease.   Nor is it an objection that the witness would be required to acutely discriminate as to the sources of his knowledge.   The statute is not to be wrongly interpreted because there is a difficulty in applying it rightly.

The industry of the counsel in this case, and that of *Gart-side* v. *Connecticut Mutual Life Insurance Company*, now also under consideration, has probably collected all of the decisions that have an immediate bearing upon the present question.   They are all decisions of the courts of the State of New York, and are cited in the briefs.   It is noticeable that the latest decision, that of the Court of Appeals in *Edington* v. *Insurance Company* (New York), gives no countenance to the lax construction which some of the earlier cases have put upon the statute.   Earl, J., who delivered the opinion in that case, is careful to construe the statute in necessary subordination to its terms.   The words of the New York act are, moreover, less restrictive than those of the Missouri statute ; since, instead of " information which he may have acquired from any patient," etc., the statute of New York reads, " which the physician may have acquired in attending any patient," etc.   The key to our statute is submission or disclosure on the part of the patient ; but the words of the New York act less carefully guard against the exclusion of evidence that there is no reason for excluding.   But, under either law, where the facts sought to be elicited are such, and so superficially apparent, that in regard to them no confidence could have been reposed, the basis of the exclusion does not exist.

Applying what has been said, it is apparent that there was error in admitting evidence in the case at bar.   The physicians testified, not merely to outward appearances that involved no professional examination, but, against objection, gave the results of information which they acquired through the medium of their professional attendance, though oral communications of the patient, and knowledge resulting from these, were excluded.   There was testimony to the effect that a diagnosis could have been made simply from the objective symptoms, without inquiry, — for instance, whether the patient had slept, or as to his sensations, — and upon this basis the witnesses gave testimony as to the symp-

toms which they had observed when treating their patient professionally, and as to their treatment of him based upon such observations. This was error. The witnesses should have been instructed, not as they were, to confine their testimony to information other than statements of the patient, but they might with propriety have been told that they were not at liberty to testify to any information which they had acquired from the patient, either by word of mouth or by observation, while professionally attending him, which information was necessary to enable them to treat him or prescribe for him as physicians; that other facts they might testify to, and especially any circumstances that came to their knowledge otherwise than through their relation as physicians to their patient.

The next question relates to the second ground of defence. None of the premiums paid were deposited in court by the defendant, and upon this ground the plaintiff objected to all evidence as to misrepresentation on the part of the deceased as to his age. The court overruled the objection and admitted evidence tending to show misrepresentation, and the jury were instructed to the effect that if, when the answer as to the age of the deceased was made, it was untrue, and that his age was forty years, then the false statement avoided the policy. The policy is dated August 2, 1870, and contains the following provision : " In case of the forfeiture of this policy, the insured shall not be entitled to any return of premium or share of surplus funds." The act of the Legislature of this State under which the plaintiff claims was approved March 23, 1874. The second section is retrospective in terms as well as prospective, and the question here has been argued whether the second section is constitutional, so far as it undertakes to affect contracts made before the law was passed. That section is as follows :

" In suits brought upon life policies heretofore or hereafter issued, no defence based upon misrepresentation in obtaining or securing the same shall be valid unless the

defendant shall, at or before the trial, deposit in court, for the benefit of the plaintiffs, the premiums hereafter received on such policies, with six per cent interest per annum from the date of the receipt.'' Whether this law impairs the obligation of the contract we need not inquire. It is argued that it does not, since the ground of this defence is that no contract was made — that, owing to the misrepresentation, the risk never attached. The purpose of this section is, indeed, to hold life companies to a consistent position; to prevent their playing fast and loose, and to secure to the other party the premiums for which, if no risk attached, he would have received no consideration. But until this act was passed, no burden of returning the premiums, as a condition of making what certainly might be a meritorious defence, was imposed on the company. The section does, indeed, say, '' the premiums hereafter received,'' etc.; but the right of the company to make this defence was a vested right before the law was passed. Even on the theory that the risk never attached, the company had the right to urge the defence of misrepresentation, unhampered by the burden of depositing the premiums. The retrospective clause injuriously affects this right, not in any matter relative to evidence or process, or by way of curing mistakes or effectuating the intent of parties, but clogs and burdens what may be a meritorious defence. It is a legislative forfeiture, except on condition, and compels the company to buy justice, which before the law passed, was to be freely had. The clause is retrospective in the sense of the. Constitution of 1865. Art. I., sect. 28; *St. Louis* v. *Clemens*, 52 Mo. 143; *Hope Ins. Co.* v. *Flynn*, 38 Mo. 483; Cooley's Const. Lim. *362.

The first condition of this policy is: '' In case the statements made by or on behalf of, or with the knowledge of the said assured to said company, as the basis of, or in the negotiations for this contract, shall be found in any respect untrue, this policy shall be null and void.'' This clearly refers to the application, in which the statements as to the age of the

assured were made; and these statements were properly treated by the court below, in the instructions, as warranties, and not merely as representations. There is no question but what the application and its statements were the basis on which the defendant issued the policy.

It is urged on the part of the defendant, that unless there is error in the action of the court below extending to both branches of the defence, the judgment should not be reversed. But it is impossible for this court to say on what ground the jury found for the defendant. As there was material error in relation to the admission of evidence as to the first defence, this may have prejudiced the plaintiff, who, therefore, is entitled to a new trial.

The judgment is reversed and the cause remanded. Judge BAKEWELL concurs; Judge LEWIS is absent.