GARTSIDE v. THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, *Appellant.*

**Witness:** INFORMATION ACQUIRED BY PHYSICIANS AND SURGEONS, PRIVILEGED, WHAT. Section 4019, Revised Statutes, declares that a physician or surgeon shall be incompetent to testify "concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient, or do any act for him as a surgeon." *Held,* that the word "information," as here used, includes not only communications made by the patient, but knowledge obtained by the physician or surgeon through his own observation or examination while attending the patient in a professional capacity. All such he is forbidden to disclose.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*B. D. Lee* for appellant.

The court of appeals gave too broad a construction to the statute of Missouri relating to the competency of witnesses. It should have been strictly construed. *Smith v. Moffat,* 1 Barb. (N. Y.) 65; *Dwelly v. Dwelly,* 46 Me. 377; *Young v. McKenzie,* 3 Ga. 31; *Dewey v. Goodenough,* 56 Barb. (N. Y.) 54; *State v. Clinton,* 67 Mo. 380; *Satterlee v. Bliss,* 36 Cal. 489; *Gower v. Emery,* 18 Me. 79; *Hotaling v. Cronise,* 2 Cal. 60; *Warner v. Fowler,* 8 Md. 25. The New York and Michigan authorities cited by plaintiff have no application here, as the statutes of those states under which those cases were decided, differ in material respects from the statute of Missouri. They do not contain the words "from any patient." 2 N. Y. R. S., 406, § 73; 2 Mich. Comp. Laws, chap. 188, § 86. The statute of Missouri does. R. S., § 4017. The court of appeals gave such construction to the law relating to witnesses as must necessarily be productive of practical inconvenience to the community, not only against the spirit but against the plain letter of the law. This was error. *Pierson v. People,* 79 N. Y. 424; s. c., 35 Am. Rep. 524.

*Jacob Klein* for respondents.

The information which a physician is forbidden to disclose consists not merely of the communications made to him by his patient, but of facts which otherwise come to his knowledge by virtue of his professional employment. Citing cases referred to in the opinion, also *Masonic, etc., v. Beck,* 77 Ind. 203; s. c., 40 Am. Rep. 295; *Grattan v. Ins. Co.,* 80 N. Y. 281; *Hunn v. Hunn,* 1 Thomp. & C. 499. The presence of the phrase "from any patient" in our statute dose not render it different from the statutes of New York

and Michigan, or impair the force of the decisions quoted from those states. It might as well be said that information can be gained only through the sense of hearing, as that the information intended to be protected by the statute is only that which the medical person gains through the oral statements of the patient. The construction adopted by the circuit court necessitates the insertion of the word "oral" before "information" in the statute, which clearly the court had no authority to do.

But the context of the clause puts the matter beyond doubt; there is a studied discrimination in the language applied to the three professions: As to the attorney, it is the "communication" that is to be withheld. As to the priest, it is the "confession." As to the physician, it is the "information," a word more comprehensive than both of the others. It is presumed that the law-makers knew the common law rule in regard to attorneys, and if they had intended to exclude only "communications" of patient to physician, they would have used the same language as is used in regard to attorneys. As "communication" was the word that had been in use in regard to attorneys for generations, the fact that "information" was substituted for it, is proof positive that the legislature meant more than is embraced in "communication." Information may be obtained by communication, and in many different ways. All the knowledge that comes to a physician, in regard to his patient, is information.

Again, it is obvious that the purpose of the law was to create entire confidence in the mind of the patient, that his maladies could not be disclosed by the physician. Take the case of a patient who has an ulcer produced by venereal disease. As soon as the eye of the physician rests upon it, he knows what it is, and its origin. It matters not what his patient may say. He may deny its origin, through delicacy; and yet it is by looking at the ulcer that the physician gets his "information." It is the policy of the law to encourage the patient to receive medical aid, and

for his friends to assist him; and anything that would prevent so merciful a rule is against public policy.   Take, for instance, cases of delirium tremens.   It is for the interest of society, and certainly in harmony with every human principle, that the patient should receive medical attention. But we will say that the physician who is called to attend upon him may be called into court to testify that he had delirium tremens.   The fear that such would be the case might deter the friends of the patient from calling a physician, and thus the law would become an engine of inhumanity and cruelty, for in cases of delirium tremens the physician would get "information" in regard to the disease without any "communication" from the patient, unless his incoherent ravings may be considered as communications.

NORTON, J.—This suit was instituted in the circuit court of the city of St. Louis, on a policy of insurance to recover a death loss.   On the trial judgment was rendered for defendant, which, on plaintiff's appeal to the St. Louis court of appeals, was reversed, and from the judgment of reversal defendant prosecutes an appeal to this court

The only question presented on said appeal for our determination is, whether a physician, who is called to visit a patient, when introduced as a witness, can be required or allowed to disclose any information acquired by him from such patient, either orally, by signs or by observation of the patient after he has submitted himself for examination, which information was necessary to enable him to prescribe for such patient.   An affirmative answer reverses, and a negative answer affirms the judgment, and the solution of the question is dependent upon a construction of the fifth subdivision of section 4017, Revised Statutes, which declares that the following persons shall be incompetent to testify, viz:     *     *     "A physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a

professional character, and which information was neces-
sary to enable him to prescribe for such patient as a physi-
cian, or do any act for him as a surgeon."

It is contended upon the one hand that the above stat-
ute was only designed and intended to forbid the disclosure
of such information as a physician while attending a patient
acquires orally from the patient. It is contended, on the
other hand, that the statute forbids, not only information
acquired through the ear by oral communication, but also
all information acquired through the eye by observation
or examination of the patient after he has submitted him-
self to the care of the physician for examination and treat-
ment. In settling this contention, and in determining the
proper construction to be placed on said section 4017, we
feel authorized to look at the adjudications in other states
having similar statutes.

A kindred statute has been in existence in New York
since 1828, and is as follows, viz: "No person authorized
to practice physic and surgery shall be allowed to disclose
any information which he may have acquired in attending
any patient in a professional character, and which infor-
mation was necessary to enable him to prescribe for such
patient as physician, or do any act for him as a surgeon."
This statute has been repeatedly before the courts of that
state for construction, and in a long line of decisions, be-
ginning in 1834 and extending down to 1880, it has been
held that the object of the statute was to impress secrecy
upon the knowledge acquired by a physician in the sick
chamber, whether acquired by conversations had with the
patient, or as the result of observation or examination of
such patient, and which information was necessary to en-
able him to prescribe for the patient. *Johnson v. Johnson,*
4 Paige 460 ; *Hanford v. Hanford,* 3 Edw. Ch. 468; *People
v. Stout,* 3 Parker Cr. 670 ; 45 N. Y. 125 ; 5 Hun 1; *Ed-
ington v. Ins. Co.,* 67 N. Y. 185 ; *Dilleber v. Ins. Co.,* 69 N.
Y. 256 ; *s. c.,* 25 Am. Rep. 182 ; *Edington v. Ins. Co.,* 13 Hun

543; *Grattan v. Mutual Life Ins Co.*, 24 Hun 43; *Cahen v. Ins. Co.*, 69 N. Y. 300.

In Michigan the statute upon this subject is in the exact words of the New York statute, and the same construction has been put upon it by the courts of that state, Judge Cooley, who delivered the opinion in the case of *Briggs v. Briggs*, 20 Mich. 34, observing: "Nor do we think the physician's evidence admissible. He had no knowledge upon the subject, except what he obtained in the course of his professional employment, and the case appears to be directly within the statute. * * We do not understand the information here referred to, to be confined to communications made by the patient to the physician, but regard it as protecting with the veil of privilege whatever, in order to enable the physician to prescribe, was disclosed to any of his senses, and which in any way was brought to his knowledge for that purpose."

It is plausibly argued by counsel that, inasmuch as our statute differs from the New York and Michigan statutes in this, that the words "from the patient" inserted in our statute after the word "acquired," are not to be found in the New York statute, therefore the decisions above referred to are not authoritative. While it is true that the phraseology of our statute is different in the above respect from the New York statute, it is also true that the object intended to be accomplished by both is the same, and the meaning of both is the same when construed with reference to the object intended to be brought about, viz: casting "the veil of privilege" or secrecy over information acquired by a physician while professionally engaged in the sick chamber, and necessary to enable him to prescribe. Information acquired by a physician from inspection, examination or observation of the person of the patient, after he has submitted himself to such examination, may as appropriately be said to be acquired from the patient as if the same information had been orally communicated by the patient.

The construction contended for by defendant's counsel, that by the statute a physician is forbidden to disclose only such information as may have been communicated to him orally by his patient, would, in our opinion, nullify the law. To hold that, while under the statute a physician would be forbidden from disclosing a statement made to him by his patient that he was suffering from syphilis; and to allow him to state as the result of his observation and examination of the patient that he was diseased with syphilis would be to make the statute inconsistent with itself. It is doubtless true that a physician learns more of the condition of a patient from his own diagnosis of the case than from what is communicated by the words of the patient; and to say that while the mouth of a physician is sealed as to the information acquired orally from his patient, it is opened wide as to information acquired from a source upon which he must rely, viz: his own diagnosis of the case, would he to restrict the operation of the statute to narrower limits than was ever intended by the legislature and virtually to overthrow it.

It follows from what has been said that the circuit court erred in permitting Drs. Gregory and Bauduy, two physicians, to give in evidence the information acquired by them while attending Gartside, their patient, professionally, although such information was acquired not from what the patient said but from observation and examination. The same error was committed in reference to the admission of the evidence of Dr. Hodgen, except as to information acquired by him from observing Gartside on the street anterior to his employment as a physician.

The judgment of the St. Louis court of appeals reversing the judgment of the circuit court and remanding the cause, is affirmed, with the concurrence of all the judges.*

---

*The following table prepared by Mr. Jacob Klein shows in what states and territories statutes similar to the one considered in this case have been adopted, and the time and order in which they were adopted:

1. New York, 1828-9; 2 R. S. 1829, p. 406, § 73, 1st Ed. Now in Code of Proc., § 834.

2. Missouri, 1835; R. S. 1835, p. 623, § 17. Now in R. S. 1879, p. 690, § 4017.

3. Arkansas, 1838; R. S. 1838,. p. 776, § 22. Now in Dig. of St. 1874, p. 492, § 2485.

4. Michigan, 1846; R. S. 1846, ch. 102, § 86. Now in Compiled Laws 1871, § 5943.

5. Wisconsin, 1849; R. S. 1849, ch. 98, § 75. Now in R. S. 1878, p. 992, § 4075.

6. Iowa, 1851; R. S. 1851, § 2393. Now in Code 1880, (Miller,) p. 860, § 3643.

7. California, 1853. Compiled Laws 1850-3, p. 591, § 398. Now changed and in Code of Civil Procedure, An. by Haymond & Busch, vol. 2, p. 406, § 1881.

8. Kansas, 1855; Statutes of Kas. Terr. 1855, p. 764, § 20. Now in Dassler's St. 1879, p. 645, § 3851.

9. Nebraska, 1858. Laws 1859, p. 159, § 315. Now in Compiled St. 1881, (Brown,) p. 575, § 333.

10. Dakota, 1862. Gen. Laws 1862, p. 100, § 313. Now in Revised Codes 1877, p. 563, § 499.

11. Oregon, 1862. Gen. Laws 1843-72, p. 251, § 702, cl. 4.

12. Arizona, 1864. Howell's Code, § 400. Now in Compiled Laws 1877, p. 470, § 2836.

13. Minnesota, 1866. Statutes 1866, ch. 73, § 10. Now in Gen. St. of Minn. 1878, (Young,) p. 792, § 10.

14. Indiana, 1867. Rev. of 1876, vol. 2, p. 134. R. S. 1881, p. 93, § 497.

15. Nevada, 1869. Laws 1869, p. 196. Compiled Laws 1873, vol. 1, p. 406, § 1445 (§ 384).

16. Wyoming, 1869. Gen. Laws 1869, p. 572, § 325.

17. Utah, 1870. Compiled Laws 1876, p. 506, § 1607.

18. Montana, 1871. Laws 1871-2, p. 125, § 450.

19. Idaho, 1875. Laws 1875, § 622.

20. Washington Territory, 1881. Washington Code 1881, p. 102, § 392.