JOHN KLING, Respondent, v. THE CITY OF KANSAS, Appellant.

Kansas City Court of Appeals, February 8, 1887.*

1. WITNESSES — INCOMPETENCY OF UNDER SECTION 4017, REVISED STATUTES—PHYSICIANS.—The provisions of the statute (sect. 4017, Rev. Stat.), making a physician incompetent to testify " concerning any information which he may have acquired from any patient, while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon," are based upon that principle of public policy which lies at the foundation of the common-law rule that excludes, as privileged, professional communications made by a client to his attorney, and have been con-strued in the light of the reason for their enactment. Thus, although our statute speaks only of information acquired from the patient, it has been held to include within its meaning, information acquired from an examination of the patient as well as informa-tion orally communicated by the patient. *Gartside v. Ins. Co.,* 76 Mo. 446. And although no exception is made by the statute, still it has been held to create a privilege in favor of the patient for his protection, which he may waive. *Groll v. Tower,* 85 Mo. 249. And the statute should be so construed as to defeat an attempt to indi-rectly and circuitously prove by the physician that which the statute has prohibited from being proved by the physician. *Streeter v. City of Breckenridge,* 23 Mo. App. 244.

2. —— —— —— MEANING OF "NECESSARY INFORMATION" UNDER THE STATUTE.—Under the rule privileging communications to attorneys, the privileged communications are restricted to such as are made by the client to his attorney for the purpose of obtain-ing professional advice or assistance on the subject of his rights and liabilities. The same test is applicable to the information com-municated to physicians; and any information necessarily com-municated to a physician to enable him to act professionally, is " necessary information," within the meaning of the statute ; and this applies with like effect to information acquired by the physi-cian, from seeing and examining the patient, as when the informa-tion is orally communicated by the patient.

---

* NOTE :—Certified copy of this opinion was not delivered to me until Dec. 3, 1887.—REPORTER.

3. MUNICIPAL CORPORATIONS—DUTY AS TO KEEPING STREETS AND SIDEWALKS IN REPAIR.—A municipal corporation is not required to keep all of its streets, or the whole of any one street in repair, nor to keep the sidewalk in repair for its entire width. But when a street is opened for use it should be put in a reasonably safe condition; and the act assumes, on the part of the authorities, the duty of keeping the highway thenceforth in suitable repair. Whether the principle has any application to a street which has. been opened by a city to public travel for its entire width, so long as it remains thus open to travel, *quaere ?*

4. PRACTICE—INSTRUCTIONS—WHEN PROPERLY REFUSED.—An instruction is properly refused when so much of it as was proper was included in other instructions, given by the court. So, also, where there was no issue on which the instruction could properly be based.

5. —— CERTIFIED TO SUPREME COURT.—Because the first division of this opinion is in conflict with *Ling v. Ins. Co.* (8 Mo. App. 369), the cause will be certified to the Supreme Court. (PHILIPS, P. J., non-concurs in certifying the cause to the Supreme Court, for the reasons stated by him *In re Estate of Elliott v. Wilson, ante,* p. 218).

APPEAL from Jackson Circuit Court, HON. JAMES H. SLOVER, Judge.

*Affirmed.*

*Cause certified to Supreme Court.*

Statement of case by the court.

This was an action for the recovery of damages on account of personal injuries alleged to have been received by the plaintiff by reason of the defendant carelessly and negligently permitting a sidewalk on one of its streets to become and remain in a dangerous and unsafe condition. The answer was, first, a general denial, and for a second defence it set up contributory negligence on the part of the plaintiff, and that he was intoxicated at the time he received the injuries complained of. Dr. Young attended plaintiff as his physician, immediately after the accident. The defendant took Dr. Young's deposition. The court, on motion of the plaintiff, struck from the deposition the following questions and answers :

"Q. State, as regards sobriety, in what condition you found the plaintiff at that time?"

"A. Well, I judge that he had been drinking."

"Q. What indications did he show that he had been drinking and was at that time under the influence of liquor?"

"A. The way he talked, and his appearance; he seemed to be feeling pretty good, instead of lamenting over his trouble."

For the plaintiff the court gave five instructions, the first of which was as follows:

"1. The court instructs the jury that it was and is the duty of defendant, when building sidewalks, to so construct them as to be reasonably safe for the passage thereon, both night and day, of the traveling public, and thereafter to maintain such reasonable watch and supervision over the same as to detect any defects therein, and to cause such repairs to be made therein as will keep the same reasonably safe for the use of persons passing thereon, without injury to life or limb; *and you are further instructed that the foregoing duties devolved upon defendant, in connection with the sidewalk of defendant, where plaintiff was injured.*"

The court gave twenty-two instructions for the defendant, but refused to give for it the two instructions following:

"1. You are instructed that the defendant, the City of Kansas, is not bound to keep all of its streets in a safe and proper condition for travel; but it is sufficient that the defendant keep such streets as are required for public use in such condition; and if you believe, from the evidence, that at the time mentioned in plaintiff's petition there were other streets by which the plaintiff might have safely traveled without any special inconvenience to him, but that he voluntarily chose to go the way he did, knowing of the defective sidewalk complained of, and that he was guilty of carelessness and

negligence, which directly contributed to the injury complained of, then you must find for the defendant.

"2. You are instructed that the omission or failure of the city to light its street-lamp or lamps on its street or streets where the plaintiff alleges he was injured, constitutes no negligence or carelessness on the part of the city."

R. W. QUARLES and W. A. ALDERSON, for the appellant.

I. The testimony of Dr. V. P. Young, concerning the intoxicated condition of the respondent at the time he was injured, does not come within the meaning of the statute concerning privileged communications. The physician himself stated that it was not necessary for him to know that respondent was intoxicated, in order that he might prescribe for him as a physician, or do any act for him as a surgeon. There can be no question at all that the first and second questions, quoted under the assignment of errors, and the answers thereto, were proper, and the court flagrantly erred in rejecting the same. It was one of the main defences of appellant, that the respondent was intoxicated at the time he fell, and the very strongest evidence upon this issue was the testimony of the attending physician and surgeon, which must have turned the scale against the respondent. The authorities we submit upon this proposition should be sufficient to convince the most skeptical of its correctness. *Groll v. Tower*, 85 Mo. 249, overruling *Gartside v. Ins. Co.*, 76 Mo. 446; *Squires v. Chillicothe*, 89 Mo. 226, affirming *Groll v. Tower, supra; Collins v. Mack*, 31 Ark. 684, 693; *Daniel v. Daniel*, 39 Pa. St. 191, 210; *State v. Newherter*, 46 Iowa, 88, 94; *Flack's Adm'r v. Neill*, 26 Tex. 273; *Linz v. Ins. Co.*, 8 Mo. App. 369; Rogers on Ex. Test., sects. 45, 46; *Gillard v. Bates*, 6 M. & W. 546; *Edington v. Ins. Co.*, 77 N. Y. 564, 567; *Pierson v. People*, 79 N. Y. 432, 434.

II. The instruction numbered one, quoted under

the assignment of errors, presented by the appellant and refused, and that of the same number, given at the request of the respondent, may be considered together. That a municipal corporation is not bound to keep all of its streets, or the whole of any one street, or even the entire width of a sidewalk, in a safe and proper condition for travel, is a proposition that has been most thoroughly discussed and wholly supported by the Supreme Court of this state. The principle for which we contend was properly submitted in the instruction refused. But the instruction given for the respondent declared to the jury that the sidewalk in question was one which should have been kept in a good and safe condition; and thus the court usurped the functions of the jury, and determined a fact, which belonged only to the consideration of the triers of the facts. "Every defect or imperfection in the streets of a city," says Hough, J., in the case of *Craig v. Sedalia, infra*, "is not actionable. It must appear that, under the particular circumstances of the case, it was the duty of the city to have removed the obstruction, or repaired the defect, which occasioned the injury, and that the person complaining was, at the time, in the exercise of ordinary care. These are questions of fact to be determined by the jury, under appropriate instructions. In the case at bar, the court declared, as a matter of law, that it was the duty of the defendant to keep the whole of the street on which the accident occurred in repair. This was error."

III. The refusal of appellant's instruction, and the giving of that of respondent, constitute separate errors, each of which is sufficient for reversal. *Tritz v. City of Kansas*, 84 Mo. 632; *Craig v. Sedalia*, 63 Mo. 417; *Hecker v. St. Louis*, 13 Mo. App. 277; *Bassett v. St. Joseph*, 53 Mo. 290; *Brown v. Mayor*, 57 Mo. 156; *Wellington v. Gregson*, 31 Kas. 99; *Henderson v. Sandefur*, 11 Bush [Ky.] 550; Dill. Mun. Corp., sects. 1016, 1019.

IV. It was urged, at the trial, that appellant was

guilty of negligence, because its street-lamps were not lighted at the time complained of. There is no authority that can be produced in support of this contention. The second instruction, quoted under the assignment of errors, which the court refused, should have been given. *Freeport v. Isbell*, 83 Ill. 440 ; *Randall v. Railroad*, 106 Mass. 276 ; *Sparhawk v. Salem*, 1 Allen, 30 ; *Macomber v. Taunton*, 100 Mass. 255.

V. The appellant had an exceedingly unfair trial, and the judgment of the lower court should be reversed and the cause remanded.

GEORGE F. BALLINGALL and BOTSFORD & WILLIAMS, for the respondent.

I. Appellant failing to file any abstract or abridgment of the record herein, showing that any exceptions were taken or preserved to the action of the trial court, in excluding from the jury the portion of the deposition of Dr. Young, set forth in appellant's assignment of errors, or to the giving or refusing the declarations of law therein contained, or that the attention of the trial court was called to these alleged errors by any motion for a new trial on these grounds, the action of the trial court in excluding such testimony, or in giving or refusing said declarations of law, cannot be reviewed by this court on this appeal. *Hyatt v. Wolfe*, 22 Mo. App. 195 ; *Hausman v. Hope*, 20 Mo. App. 193 ; *Coy v. Robinson*, 20 Mo. App. 462 ; *Shouse, Adm'r, v. Krusor, Adm'r*, 24 Mo. App. 279 ; *Lane v. Railroad*, 18 Mo. App. 555.

II. The information received by the attending physician, which led the physician to judge that respondent had been drinking, having been obtained by him while in the necessary discharge of his professional duty, in attendance upon respondent for the injury complained of, was inadmissible in evidence against respondent's objections. *Gartside v. Ins. Co.*, 76 Mo. 446, and cas. cit. ; *Groll v. Tower*, 85 Mo. 249, and cas. cit. ; *Wetmore v.*

*Ins. Co.*, 99 N. Y. 56 ; *Grattan v. Ins. Co.*, 92 N. Y. 274 ; s. c., 80 N. Y. 297 ; *Edington v. Ins. Co.*, 67 N. Y. 185 ; *Norton v. Moberly*, 18 Mo. App. 457 ; *Benefit Ass'n v. Beck*, 77 Ind. 203.

III.   The testimony of the attending physician that he judged Kling had been drinking, even if otherwise admissible, was merely cumulative, was not material, and its exclusion was not such error as would authorize this court to reverse the judgment in favor of respondent.   *State v. McGuire*, 16 Mo. App. 558 ; *Blake v. St. Louis*, 40 Mo. 569 ; *Hand v. Kidwell*, 92 Ind. 409.

IV.   The uncontradicted evidence in the case having shown that the street of defendant, where plaintiff was injured, was one of the principal public thoroughfares of the city ; that it was constantly traveled by day and by night, and the charter of the city requiring it to keep the sidewalks thereon in repair, and appellant having admitted its duty in that regard, by the instructions given to the jury on its behalf, the giving of the first instruction for plaintiff that this duty devolved upon defendant, in connection with the sidewalk on said street, where plaintiff was injured, was not error, but was proper. The duty of defendant to keep its sidewalks and streets reasonably safe for passage thereon of the traveling public, is a question of law for the court, and not a question of fact for the jury.   *Bowie v. Kansas City*, 51 Mo. 454 ; *Oliver v. Kansas City*, 69 Mo. 79 ; *Haire v. Kansas City*, 76 Mo. 438 ; *Tritz v. Kansas City*, 84 Mo. 632 ; *City of Kansas v. Huling*, 3 West. Rep. (Sup. Ct. Mo.) 243 ; *Hedges v. Kansas City*, 18 Mo. App. 62 ; *Blake v. St. Louis*, 40 Mo. 569 ; *Bonine v. Richmond*, 75 Mo. 457 ; *Russell v. Columbia*, 74 Mo. 480 ; *Welsh v. St. Louis*, 73 Mo. 71 ; *Stevens v. Macon*, 83 Mo. 348 ; *Mauerman v. Siemerts*, 71 Mo. 101 ; *McGonigle v. Dougherty*, 71 Mo. 259 ; *Powell v. Railroad*, 76 Mo. 80 ; *Yocum v. Trenton*, 20 Mo. App. 489 ; Whar. on Negl., sect. 420.

V   Defendant's instruction numbered one was, un-

der the pleadings and evidence, properly refused. There was no evidence to support it. There was not a particle of evidence tending to show that there were other streets by which plaintiff might have traveled, and none that he had any knowledge of the defective and dangerous condition of this sidewalk, or that he was guilty of any negligence directly contributing to the injury complained of. *Corby, Ex'r, v. Butler*, 55 Mo. 398 ; *Gernen v. Railroad*, 60 Mo. 400 ; *State v. Gerber*, 80 Mo. 94 ; *State to use v. Company*, 85 Mo. 412. And the fact, even if shown, that there were such other streets, will not relieve defendant from its obligation to repair this sidewalk. *Smith v. St. Joseph*, 45 Mo. 449 ; *Beaudean v. Cape Girardeau*, 71 Mo. 392 ; *City Council of Montgomery v. Wright*, 72 Ala. 411. Besides, plaintiff was not compelled to travel on such other streets to avoid the consequences of defendant's negligence ; and if he was in the exercise of due care, at the time of the injury, defendant is liable. *Maultby v. Leavenworth*, 28 Kas. 245 ; *Kavanaugh v. Janesville*, 24 Wis. 618.

VI. Appellant's instruction numbered two, as refused, in its assignment of errors, was, under the pleadings and evidence, properly refused. There was no issue raised by the pleadings, as to the effect of the failure of the city to keep its lamps lighted at the point where the injury to respondent occurred. The instruction singles out certain facts from the evidence and informs the jury of their effect, and is a comment on the evidence. The question of negligence is for the jury, on all the evidence in the case. The other instructions given, on behalf of both respondent and appellant, confined the jury to the consideration of the precise questions raised by the pleadings and the evidence ; that is, whether appellant was negligent in failing to keep its sidewalk in repair at the point of the injury, and whether respondent was in the exercise of due care at the time of the injury, and whether such injury resulted from appellant's negligence. *Bank v. Armstrong*,

62 Mo. 68; *Bank v. Murdock*, 62 Mo. 73; *Benson v. Railroad*, 78 Mo. 504; *Kendig v. Railroad*, 79 Mo. 208; *Miller v. Marks*, 20 Mo. App. 369; *Weil v. Schwartz*, 21 Mo. App. 373; *State v. Gann*, 72 Mo. 374; *Mauerman v. Siemerts*, 71 Mo. 101; *Norton v. Ittner*, 55 Mo. 352; *Miller v. Drake*, 62 Mo. 548; *Condon v. Railroad*, 78 Mo. 567; *Boone v. Railroad*, 20 Mo. App. 232.    Appellant city had power, under its charter, to provide for lighting the streets and erecting lamps thereon, and having assumed that duty on the street where respondent was injured, the jury might well consider, in determining the question of negligence, among all the other facts in evidence, the absence of any lights in the vicinity of the known dangerous sidewalk, by which such injury was inflicted. *Indianapolis v. Gaston*, 58 Ind. 224; *Indianapolis v. Scott*, 72 Ind. 196; *Mills v. Davis*, 19 Mo. 408; *Dempsey v. Reinsedler*, 22 Mo. App. 43.

VII.    The instructions given to the jury for appellant were more favorable to it than either the law or the evidence would warrant, and fully covered the case made on the pleadings and the evidence; and the refusal of the court to give other instructions complained of was not such error as would authorize a reversal of the judgment. *Shaffner v. Leahy*, 21 Mo. App. 110; *Norton v. City of Moberly*, 18 Mo. App. 457; *State v. Floyd*, 15 Mo. 349; *Smith v. City of St. Joseph*, 45 Mo. 449.

VIII.    The appeal is without merit, was manifestly taken for delay, and the judgment in favor of respondent should be affirmed, with ten per cent. damages.

I.

HALL, J.—Was the physician competent to testify to the condition, as regards sobriety, in which he found the plaintiff when he called upon the latter as his physician?

Our statute upon this subject, Revised Statutes, section 4017, is as follows: "The following persons shall

be incompetent to testify :    *    *    *    fifth, a physician or surgeon, concerning any information which he may have acquired from any patient, while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him, as a surgeon." These provisions of the statute are based upon that principle of public policy which lies at the foundation of the common-law rule that excludes, as privileged, professional communications made by a client to his attorney.   Our statute, and similar statutes of other states, have been construed in the light of the reason for their enactment.   Thus, although our statute speaks only of information acquired from the patient, the statute has been held to include within its meaning information acquired from an examination of the patient, as well as information orally communicated by the patient.   *Gartside v. Ins. Co.*, 76 Mo. 446, and cases cited.   And, although no exception is made by the statute, still the statute has been held to create a privilege in favor of the patient, for his protection, which he may waive.   *Groll v. Tower*, 85 Mo. 249, and cases cited.   The meaning of the New York statute and of our statute, on this subject, has been said to be " the same when construed with reference to the object to be brought about."   *Gartside v. Ins. Co., supra.*   In speaking of the New York statute, the court of appeals of that state has said :   "Its object is a beneficent one ; it rests on obvious principles of convenience and policy ;   and it should be so construed as to carry out that object effectually, and, so far as the language will admit, as to reach and defeat all attempts to do, in an indirect or circuitous manner, that which it has prohibited."   *Grattan v. Ins. Co.*, 80 N. Y. 297.   And we have held that the statute should be so construed as to defeat any attempt to indirectly and circuitously prove by the physician that which the statute has prohibited from being proved by the physician.   *Streeter v. City of Breckenridge*, 23 Mo. App. 244.

Information as to the plaintiff's condition as to sobriety at the time the physician called on him was, as the physician testified, and is self-evident, not necessary to enable the physician to treat the patient for the injuries received by the latter. The question is thus presented, what is meant by the phrase in the statute, "and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon?" What information is "necessary information" within the meaning of the statute? Revised Statutes, section 4017, also provides: "The following persons shall be incompetent to testify: * * * third, an attorney, concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client." The common-law rule with reference to professional communications, made by a client to his attorney, is recognized by direct enactment, and the information given by the patient to his physician is placed by the statute upon an equal footing with the said communications. It is true that the information is by the statute limited to information which was necessary to enable the physician to act professionally, while no such limitation is fixed by the statute in relation to the communications made by a client to his attorney. But the protection of the statute is limited to such communications as shall be made by the client to his attorney in that relation. And it must not be forgotten that, although, as to the communications made to an attorney, the attorney is, by express provision of the statute, permitted to testify, with the consent of his client, and that as to the information acquired by the physician, no such privilege in favor of the patient is made by the words of the statute, our Supreme Court has held, in order to effect the object of the statute, that the patient has the like privilege with the client, and may remove the seal of secresy from the lips of the physician by consenting

that the physician may testify to the information ex-cluded by the statute. If, therefore, it should be neces-sary, in order to effect the clear and evident intention and object of the statute, to give the same construction to the limitation in relation to the communication made by the client to his attorney, and the limitation in rela-tion to the information acquired by the physician from his patient, we should not hesitate to do so, although the same words were not used in establishing the two limitations. As to the communications made by a client to his attorney the statute has simply reënacted the rule of the common law in relation to such commu-nications, as that rule has been declared and applied in the leading and best considered cases on the subject. The common-law rule was by some of the courts liber-ally construed, and was strictly construed by other courts. The liberal construction is the prevailing con-struction and the one supported by the best considered cases. The statute so declares the common-law rule as to clearly enforce in this state the liberal construction of that rule, but, as we shall see, the statute has not en-larged the common-law rule beyond the liberal con-struction thereof placed upon it by the courts. The restrictions placed upon the common-law rule under the prevailing liberal construction of it, have not been re-moved by the statute, but they still exist and form a part of the statute under a proper construction thereof, a construction made to effect, and not to defeat, the ob-ject of the statute.

Under the liberal construction of the common-law rule, that rule applied to all cases where a communica-tion was made to an attorney or other legal adviser in his professional capacity. 1 Phil. on Evid. 142. Under the liberal construction of the rule, the rule was not confined to cases in which an action was pending or was contemplated. And such is clearly the rule as declared by the statute. But under the liberal construction of the common-law rule the privileged communications were

restricted to such communications as were made by the client to his attorney for the purpose of obtaining professional advice or assistance on the subject of his rights and liabilities.   Communication to an attorney, as a friend, were not privileged ; nor were communications by a client to his attorney privileged, unless the latter was acting as such in the matter to which the communications related.   1 Phil. on Evid., p. 142, note 68.   And such is the rule as declared by the statute.   Under the statute a communication must be made to the attorney "by his client in that relation;" and the words, "in that relation," clearly mean that the communication should be made to the attorney as such, and in order to obtain the advice or assistance of the attorney concerning the matter in relation to which the communication may be made.   In treating of the common-law rule it has been said:   "The privilege does not attach to everything which the client says to his attorney ; the test is whether the communication is necessary for the purpose of carrying on the proceeding in which the attorney is employed ; if it is necessary, it becomes privileged."   1 Phil. on Evid., 142.   This same test might, we think, be laid down as the test by which to determine whether a communication is privileged under the statute.   It seems clear to us that any information orally communicated by a patient to his physician, which, although unimportant in itself, is necessarily communicated in order to give to the physician the information needed by him in order to act professionally, is "necessary information," within the meaning of the statute. It is true, that according to the strict letter of the statute, no such distinction is made, and only information is excluded which was necessary to enable the physician to act professionally, and unimportant information is not excluded, although necessarily communicated to the physician.   But the object of the statute is so clearly to protect all information necessarily communicated to the physician in order to obtain his professional assistance,

that it is not doing violence to the language of the statute to hold that any information necessarily communicated to the physician for that purpose, is "necessary information," within the meaning of the statute.

If the physician, as a physician, called for and obtained from the patient unimportant information, but which the patient communicated to the physician, as his physician, surely that information would be privileged. Having called for the information as important, the physician would not be permitted to disclose it as unimportant. If the patient, suffering from a gun-shot wound, necessarily communicate the information to the physician that the wound was received in a personal encounter, in order to explain the probable course of the ball, information of which latter fact is needed or desired by the physician, information of the fact that the patient was wounded in a personal encounter, although that fact is unimportant, would be privileged. If a patient suffering from a broken leg, in explaining to his physician the manner in which he received the injury, in order to give needed information concerning the injury, communicate to the physician information that he was under the influence of intoxicating drink at the time of the accident, such information would be excluded. Our conclusion is, that any information necessarily acquired by the physician from the patient, in order to treat him while attending him in a professional capacity is excluded by the statute.

What we have just said, concerning information orally communicated by a patient to his physician, applies with like effect to information acquired by the physician from seeing and examining the patient, because, as we have seen, the statute has placed information acquired in both ways upon the same footing. And this was also the case under the common-law rule concerning communications made by a client to his attorney. Lord Ellenborough said, "one sense is privileged as well as another. He cannot be said to be privileged as

to what he hears, but not as to what he sees, where the knowledge acquired as to both has been from his situation as an attorney." *Robson v. Kemp*, 5 Esp. 52. And it has been said on the same subject : "We believe this to be the better opinion. The situation and contents of a paper delivered to an attorney for inspection, in the course of employment as an attorney, is as much a matter of professional confidence as an oral statement of its contents or condition can be." *Brown v. Payson*, 6 N. H. 447.

If a patient be injured in such a manner as to render it necessary for him to so expose his person, in order to enable the physician to treat the injury, as to disclose to the physician a hidden defect in his person, or a concealed and degrading mark on his person, rendering him, if known, an object of contempt or infamy, although such fact may be unimportant in a professional sense, information of such fact thus acquired by the physician would be excluded under the statute. And it is plain that any information acquired by the physician, concerning the condition of the patient, from seeing him while attending him professionally is excluded by the statute, unless there is a distinction between external signs connected with the patient, which all may see, and hidden or secret signs which the physician, as such, can alone see. This distinction has been made in *Linz v. Insurance Company* (8 Mo. App. 369). The court said : "Thus, objective signs which are obvious on such an observation as implies no disclosure, symptoms which are apparent before the patient submits himself to any examination, the statute gives no authority for excluding. That a patient had an inflamed face, a blood-shot eye ; that fumes of alcohol proceeded from his person ; that he talked deliriously, could be excluded only on the basis that the statute forbids a physician to be a witness. These objective signs, and others which imply no knowledge obtained as the result of submission or exposure by the patient, and which

would be apparent before the initial act of service on the physician's part, the latter should testify to under our statute." "The key to our statute," the court said, "is submission or disclosure on the part of the patient." And the court added: "Where the facts sought to be elicited are such, and so superficially apparent that in regard to them no confidence could have been reposed, the basis of exclusion does not exist." The court so held on the authority of an opinion by Earl, J., in *Edington v. Insurance Company* (77 N. Y. 564). The distinction is founded upon the idea that the statute is based upon confidence reposed in the physician by the patient. And hence it was held that information of a fact, apparent to every one at mere casual sight, could not be considered imparted in confidence to the physician. This distinction finds no support in the words of the statute. As plainly said, in express words, by Earl, J., the distinction made by him excludes from the operation of the statute information included within its letter, but which, as the learned judge held, is not included within its spirit. In *Edington v. Insurance Company* (*supra*), only three other members of the court sat with Earl, J., and they concurred only in the result reached by him in his opinion as to the subject under discussion. In the subsequent case of *Grattan v. Insurance Company* (80 N. Y. 281), decided by a full bench, and in the opinion in which case all the judges fully concurred except Earl, J., who dissented, the basis on which the distinction was placed by Earl, J., was not recognized. The court said, in speaking of the information obtained by a physician from his patient: "The information so obtained must remain enclosed with him, for he is forbidden to disclose it. The word must be taken in its fullest sense. He must not tell it—not because a patient declared the communication to be confidential, or because the physician considered it so, but because the statute says that the communication to him shall not be by him disclosed or told. Any other rule

will annul the statute, and permit it to be evaded. * * * The court need lay down no rule; the statute is the rule, and we are merely to inquire whether the case comes within it." The basis for the distinction has thus been denied in New York, and, of course, the distinction in that state has no longer an existence.

We have seen that the distinction, admittedly, has no support from the words of the statute. Neither is it supported by the spirit of the statute. This same distinction was attempted in the application of the common-law rule concerning communications made by a client to his attorney in cases where the information was obtained by the attorney by his sense of sight. The distinction was thus stated: "An attorney may be examined as to a fact of his own knowledge, and of which he might have had knowledge, without being counsel or attorney in the cause." Bull, N. P., 384. But against the distinction it has been held that an attorney may not be called to state facts of which he might by possibility have acquired knowledge without being counsel or attorney in the cause, but of which he actually had knowledge from professional confidence. *Brown v. Payson, supra.* And the latter position recommends itself to our consideration and approval, as being more in accord with the policy upon which the common-law rule and our statute are based. The test is, how was the information acquired; it matters not that it could have been acquired in a different way. In our opinion the distinction is supported by neither the spirit nor the letter of the statute, and is not real. The physician called upon the plaintiff as his physician; any information as to the plaintiff's condition as to sobriety, acquired by the physician by seeing him, was necessarily acquired in order to treat him, and is excluded by the statute. The indications that the plaintiff had been drinking, and was under the influence of liquor, were, in part, the appearance of the plaintiff, as stated by the physician. The court properly struck the questions and answers from the deposition.

Two other questions, and the answers thereto, were struck from the same deposition by the court. The action of the court in respect thereto is not urged as error in the defendant's brief, and we, therefore, say nothing in relation thereto.

## II.

Objection is made by the defendant to that part of instruction numbered one given for the plaintiff in italics, which declared that it was the duty of defendant to make and keep the sidewalk, where the plaintiff was injured, reasonably safe for travel. The defendant takes the position that whether such duty devolved upon it was not a question of law, but was a question of fact for the jury, under proper instructions. This position is based by the defendant upon the principle, long recognized by our Supreme Court, that a municipal corporation is not required to keep all of its streets, or the whole of any one street, in a proper condition for travel. *Bassett v. St. Joseph*, 53 Mo. 290 ; *Brown v. Mayor*, 57 Mo. 156 ; *Craig v. Sedalia*, 63 Mo. 417. And the more recent application of the principle to the case of a sidewalk. *Tritz v. Kansas City*, 84 Mo. 642. The instruction asserts nothing contrary to that principle. The instruction does not declare that it was the duty of defendant to keep the sidewalk in repair for its entire width ; from the instruction no such inference can be drawn. The instruction simply declares that it was the duty of defendant to keep the sidewalk are sonably safe for travel.

The principle sought to be enforced by the defendant was first recognized in this state in the case of *Bassett v. St. Joseph* (*supra*). And in that case it was also said, in the closing sentence of the paragraph in which the said principle was laid down : "When a street is opened for use it should be put in a reasonably safe condition." The principle relied on by defendant was recognized and applied in the case of *Heckler v. St. Louis* (13 Mo. App.

277).   But the court also said, on page 280:  " When a located street is prepared for travel, and thrown open to public use by the municipal authorities, this admits the fulfilment of all preliminary conditions.   It assumes, on the part of the authorities, the duty of keeping the highway, thenceforth, in suitable repair, and invites the public to travel upon it, under an implied assurance that they may do so with safety.   There can be no mistake, then, about the duty of the corporation, or its liability to one who may be damaged by an obstruction or defect not in consonance with the faithful performance of such duty."   It may well be doubted whether the principle relied upon by the defendant has any application to a street which has been opened by a city to public travel for its entire width, so long as it remains thus open to travel.   But we are not called upon to decide this question, for the reason, as said before, the instruction complained of is not open to the objection made.

Only a few excerpts from the evidence have been presented in the abstracts of the record furnished us. As we have often said, under rule fifteen of this court, the abstracts of the record, except in cases of dispute between the appellant and respondent, are treated by us as the record; we do not go to the record to ascertain the facts.   Every intendment must be made by us in favor of the action of the trial court in giving the instruction referred to.   Had the street, on which the sidewalk was, been opened by the city to public use for that portion of the street, including the sidewalk, the instruction properly declared that it was the duty of the city to keep the sidewalk reasonably safe for travel.   In the absence of anything in the abstracts of the record indicating the contrary, we shall assume that the evidence showed that such was the fact.

### III.

Instruction numbered one, asked by the defendant,

was properly refused. So much of said instruction as was proper was included in other instructions given by the court. The failure of the plaintiff to select another route, under the facts of this case, did not constitute contributory negligence *per se* on his part. *Beaudean v. Cape Girardeau,* 71 Mo. 397; *Smith v. St. Joseph,* 45 Mo. 449; *City of Montgomery v. Wright,* 72 Ala. 411.

## IV.

The refusal of the second instruction asked by the defendant was not error. There was no issue as to the effect of the failure of the defendant to keep its street-lamps lighted at the place of the accident. The refusal of the instruction was not equivalent to the assertion of the contrary proposition of law. *Dempsey v. Reinsedler,* 22 Mo. App. 43; *Mills v. Davis,* 19 Mo. 408.

The case was fairly tried. The judgment is affirmed. But as in my judgment the first division of this opinion is in conflict with *Linz v. Ins. Co.* (8 Mo. App. 369), the cause will be certified to the Supreme Court. Ellison, J., concurs. Philips, P. J., concurs in affirming the judgment; but non-concurs in the order certifying the cause to the Supreme Court, for the reason stated by him *In re Estate of Elliott v. Wilson (ante,* p. 218), this day certified by a majority of the court to the Supreme Court.